BERTHA MONTGOMERY, by next friend, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division Two, May 10, 1904.

1. **INSTRUCTION: Interest of Witness: Civil Case.** Where the court, in a civil case, instructs the jury that they are to take into consideration the interest, if any, which the witnesses have in the result of the litigation, and that if they believe any witness has knowingly and willfully sworn falsely to any material matter in issue, they will disregard the whole or any part of such witness's testimony, it is not error to refuse another instruction telling the jury that plaintiff is a competent witness in her own behalf, yet in determining what weight, if any, they will give her testimony, they have a right to consider her in-

terest in the result of the litigation, and what she has testified to against her interest, if anything, is to be taken as true, and what she has testified to in her favor is to be given only such weight as the jury may believe from all the evidence in the case it is entitled to, unless plaintiff's evidence discloses such admissions on her part adverse to her right to recover as make it incumbent on the court to indicate to the jury that such admissions affect her right of recovery.

2. **NEGLIGENCE: Confined to Allegations.** An instruction is not erroneous which confines the issues to the negligence charged in the petition, and can not be said to give the jury a "roving commission" because it does not tell the jury that they are not to consider other precautions which might have prevented the accident.

3. ————: **General Instruction: Roving Commission: Other Grounds.** If it can not be seriously conceived that when all the instructions are read together and the whole evidence is examined, the jury were misled into returning a verdict for plaintiff upon any other ground of negligence than that alleged in the petition, no one of the instructions, itself true as a general proposition, can be successfully attacked as being too general or as giving the jury a roving commission to consider other acts of negligence than those charged.

4. ————: **Flagman: Presence at Crossing: Signal.** It is not sufficient to tell the jury that the presence of a watchman at a railroad crossing is sufficient warning to a traveler not to cross. It is the duty of such watchman to warn travelers about to cross, by a signal or otherwise, of the approach of a train. If he is present at the crossing and gives no signal, the traveler may well conclude that it is safe to cross.

5. ————: ————: **Absence from Crossing.** Where a railroad company has for a considerable time maintained a flagman at a public crossing to advise the public of the approach of trains, and this fact is known to the traveler about to cross, his absence from his post is evidence of negligence.

6. ————: **Crossing Track: Hearing Bell.** Plaintiff and her sister and brother, in an open buggy, were returning from church on a dark night, and were struck on a public crossing in the town by a freight train which was backing, it was alleged, without any lights or the ringing of the bell. Her evidence was that when they were two blocks or more from the crossing, they heard an engine bell ring three or four times below the depot, which was 322 feet from the crossing, and then a puff, and then it stopped, and that after that they heard no bell or other signal or noise indicating that the train was backing or moving

towards the crossing; that, after hearing this momentary ring-
ing of the bell, they drove on slowly, stopping and listening
and looking, and seeing and hearing nothing to indicate that
a train was coming, they slowly drove on to the crossing, and
were struck. *Held,* that the court could not say as a matter
of law that there was any such ringing of the bell as pre-
cluded plaintiff's recovery on the ground that she recklessly
drove in front of a moving train, of the approach of which she
was fully advised. On the contrary, the fact that she was look-
ing for the train to be sure that there was none, discloses pru-
dence and caution rather than gross negligence.

7. ———: **Demurrer to Evidence: Effect of.** A demurrer to the
evidence admits the facts the evidence tends to prove, and in
passing upon it the court is required to make every inference
of fact in favor of the opposite party which a jury might, with
propriety, infer in his favor, and if, when viewed in this light,
it is sufficient to support a verdict in his favor, the demurrer
should be overruled.

8. ———: **Running Train Without Lights or Signals.** The back-
ing of a freight train on a dark night, without placing a light
on the rear car, or having a brakeman thereon with a lantern
to give warning, and without ringing the bell or giving warn-
ing of its intention to back over a much-used crossing in a
town of 2,000 people, is negligence; and if, as a result of that
negligence, a traveler in the exercise of ordinary caution is
injured while crossing the track, the company should pay for
his injuries.

9. **VERDICT: $8,500.** A verdict for $8,500 for a girl seventeen
years old at the time of the accident, is not considered ex-
cessive in this case.

Appeal from Cass Circuit Court.—*Hon. W. W. Graves,
Special Judge.*

AFFIRMED.

*R. T. Railey* for appellant.

(1)   The court below committed reversible error
in refusing defendant's instruction "C." The law is
now thoroughly settled in this State to the effect that
said instruction is eminently proper and should be
given.   Feary v. Railroad, 162 Mo. 105; Pratt v. Con-

way, 148 Mo. 299; Davies v. Railroad, 159 Mo. 6; Payne v. Railroad, 30 S. W. 150; State v. Bryant, 102 Mo. 32; State v. Turlington, 102 Mo. 663; State v. Brooks, 99 Mo. 137; Bogie v. Nolan, 96 Mo. 91; State v. Peak, 85 Mo. 192; State v. Talbott, 73 Mo. 350; State v. Curtis, 70 Mo. 596; Robbins v. Butler, 24 Ill. 387; Erwin v. Railroad, 68 S. W. 90. (2) As to plaintiff's instruction number 2, given by the court: The rule in this State is now well settled that pleadings shall be strictly construed against the pleader. Snyder v. Free, 114 Mo. 367; Overton v. Overton, 131 Mo. 566; Young v. Schofield, 132 Mo. 661; Boles v. Bennington, 136 Mo. 528; Leete v. Bank, 141 Mo. 581; Sidway v. M. L. & L. S. Co., 163 Mo. 372; Mallinckrodt C. Wks. v. Nemnich, 69 S. W. 358. It is equally well settled in this State that where the petition charges general negligence, which is followed by one or more specific charges of negligence, or where it contains—as in this case—specific charges of negligence, the plaintiff in her proof and under her instructions, should be confined to such specific charges alone. Waldheir v. Railroad, 71 Mo. 518; Hite v. Railroad, 130 Mo. 136; McManamee v. Railroad, 135 Mo. 447; Huston v. Tyler, 140 Mo. 263; McCarty v. Hotel Co., 144 Mo. 402; Chitty v. Railroad, 148 Mo. 74; Bartley v. Railroad, 148 Mo. 139; Feary v. Railroad, 162 Mo. 96; Pryor v. Railroad, 85 Mo. App. 378. In the case at bar the following specific charges of negligence are attempted to be pleaded: (a) That defendant backed its train over said crossing, without giving any warning or signals. (b) That it had no light or brakeman on the rear of the car to warn plaintiff of its approach. (c) That defendant had been in the habit of keeping a flagman at said crossing to give warning, and that no flagman was present at time of accident. The three specific charges, supra, constitute the sole grounds of negligence pleaded in petition. The court below, therefore, erred in giving of its own motion instruction 2. It is perfectly manifest that this instruc-

tion did not confine the jury to the specific charges of negligence pleaded in petition, but gave the jury a roving commission to draw upon their own imagination, to convict defendant upon supposed negligence not pleaded and outside the case. Weber v. Railroad, 58 N. Y. 460. The jury may have considered defendant negligent in failing to stop its train after plaintiff came upon or near the track, when the signals were given. The jury may have concluded that it was not a proper thing for defendant to switch its train across a thoroughfare in a city like Pleasant Hill. The jury may have thought that defendant had been guilty of other acts of negligence, as in the Gurley and Lamb cases, which occurred on the same crossing, and that by reason thereof defendant should have had an overhead crossing. The jury may also have concluded that, as a matter of safety, defendant should have kept and maintained gates, in connection with its flagman, which would have precluded plaintiff from coming on the track in front of said car. The jury may have concluded that defendant, at the time of accident, was guilty of negligence in moving its train at too great a rate of speed, although no ordinance was pleaded or offered in evidence upon this subject. The jury may have concluded that defendant should have kept and maintained a street lamp and kept it properly lighted where Wyoming street crosses the tracks. Various other things may have been considered by the jury, under this omnibus instruction, without any reference to the issues presented by the petition. We, therefore, in great confidence insist that this instruction is so clearly erroneous and prejudicial that the case, without hesitation, should be reversed on account of the giving of same. (3) Defendant was not bound to have a watchman at Pleasant Hill. Welsch v. Railroad, 72 Mo. 451; Baker v. Railroad, 147 Mo. 161; Beisiegel v. Railroad, 40 N. Y. 25; Cumming, etc. v. Railroad, 104

N. Y. 671; Railroad v. Herman, 39 Ill. App. 287; Railroad v. Jacobs, 63 Ill. 178; Railroad v. Matthews, 36 N. J. L. 534; State v. Railroad, 47 Md. 76; Sellars v. Railroad, 94 N. C. 654. As the law did not require, under the circumstances of this case, a flagman to be stationed at Pleasant Hill, the mere fact that defendant had Lock there for its own convenience did not confer a right of action upon plaintiff on account of his absence, if he was absent at time of accident. Barney v. Railroad, 126 Mo. 392; State ex rel. v. O'Neill, 151 Mo. 89; May v. Crawford, 150 Mo. 527; Culbertson v. Railroad, 140 Mo. 35; Reichenbach v. Ellerbe, 115 Mo. 595; Jackson v. Hardin, 83 Mo. 175; Powell v. Railroad, 76 Mo. 80; Dwight v. Ins. Co., 103 N. Y. 359.

*H. A. Jones* and *A. A. Whitsitt* for respondent.

(1) (a) It is the duty of a flagman at a crossing at a public street which is much used by the public to know of the approach of trains, and give timely warning to all persons attempting to cross the railroad track, and the public have a right to rely upon a reasonable performance of that duty. Railroad v. Blane, 70 Ill. App. 518; Railroad v. Hutchinson, 120 Ill. 587. (b) Though a railroad is under no original obligation to station a flagman at a particular crossing, yet, if it has done so for many years, travelers may presume, in his absence, that the way is clear and safe. Martin v. Railroad, 42 Atl. 442; Railroad v. Gunderson, 174 Ill. 495. (c) The absence of the flagman is an assurance by defendant that the way is clear. The extent to which he may rely upon such assurance and invitation is a question of fact for the jury, unless it conclusively appears that he relied exclusively thereon, because the court can not say that a prudent person would not be influenced to some material extent by them, and so regulate his conduct. To assume otherwise would be against all human experience. Palmer v. Railroad, 112

N. Y. 234; Glansbing v. Sharp, 96 N. Y. 676; Warren v. Railroad, 163 Mass. 484 (40 N. E. 895); Hudson v. Railroad, 67 Conn. 266; Railroad v. Stegemeier, 118 Ind. 305 (20 N. E. 843); Evans v. Railroad, 88 Mich. 444 (50 N. W. 387); Beach on Con. Neg., sec. 190; 2 Shearman & Redfield on Neg., sec. 466; 3 Elliott on R. R., sec. 1167.   (d)   The absence of a flagman from his post may excuse one cognizant of his duty from gross negligence, in failing to stop before attempting to cross and look both ways.   Judson v. Railroad, 53 N. E. 518; Duffy v. Railroad, 32 Wis. 269; Bunting v. Railroad, 14 N. W. 351; Railroad v. Rice, 10 Kan. 426; Continental Imp. Co. v. Stead, 95 U. S. 161 (19 L. Ed. 403). (e)   The question in this case is whether or not respondent exercised reasonable care under the circumstances — that care and circumspection which an ordinarily prudent person would have exercised under the same circumstances.   Baker v. Railroad, 147 Mo. 140; Stepp v. Railroad, 85 Mo. 235; Petty v. Railroad, 88 Mo. 318; Johnson v. Railroad, 77 Mo. 546; Railroad v. Barnett, 59 Pa. 264; Jennings v. Railroad, 112 Mo. 276; Ping v. Railroad, 71 Mo. App. 577; Kelley v. Railroad, 88 Mo. 534; Donahue v. Railroad, 91 Mo. 357. (2).   A railroad company is required to take extraordinary care to prevent accident when it undertakes to back a train of cars or engine at a highway crossing.   Shaw v. Railroad, 8 Gray 45; Bradley v. Railroad, 2 Cush. 539; Linfield v. Railroad, 10 Cush. 564; Bailey v. Railroad, 107 Mass. 496; McGovern v. Railroad, 67 N. Y. 417; Railroad v. Gorvey, 58 Ill. 85; Kennedy v. Railroad, 36 Mo. 535; Railroad v. Rice, 10 Kan. 426; Bohon v. Railroad, 15 Am. & Eng. R. R. Cas. 374; Binard v. Railroad, 164 Mo. 270.   It is negligence to switch cars over a crossing in a populous city on which a brakeman cannot see the track.   Settle v. Railroad, 15 Am. & Eng. R. R. Cases (N. S.) 129.   (3) It is gross negligence where a railroad company backs its train across the main street of a village without a

brakeman at the rear end as a lookout.    Cooper v. Railroad, 66 Mich. 261; Robison v. Railroad, 48 Cal. 409; Clampit v. Railroad, 49 Am. & Eng. R. R. Cases 468 (84 Iowa 71).    (4)    So at night both a light and a lookout should be kept on the rear of the train when backing upon a crossing. Cherry v. Railroad, 16 Hun 415.    (5)    There is nothing in the testimony of plaintiff to authorize giving the refused instruction ''C.'' This court in passing upon this question has held that such instructions should not be given unless facts material to the issue have been admitted.    Dohlstrom v. Railroad, 108 Mo. 540; Ephland v. Railroad, 137 Mo. 191; McPeak v. Railroad, 128 Mo. 648.    (6)    If the instructions, taken as a whole, present the issues fairly and are not calculated to mislead the jury, that is all that is necessary.    Muehlhauser v. Railroad, 91 Mo. 332; Henry v. Railroad, 113 Mo. 525; Swan v. Lullman, 12 Mo. App. 583; Ross v. Clark, 14 Mo. App. 594; Sappington v. Railroad, 14 Mo. App. 86; Yocum v. Trenton, 20 Mo. App. 489; Schooler v. Schooler, 18 Mo. App. 69; Reilly v. Railroad, 94 Mo. 600; Harrington v. Sedalia, 98 Mo. 583; Wetzell v. Wagner, 41 Mo. App. 509; Ridenhour v. Railroad, 102 Mo. 270; O'Connell v. Railroad, 106 Mo. 482.

GANTT, P. J.—From a judgment in favor of the plaintiff in the circuit court of Cass county, the defendant appeals.    The action is for damages based on the alleged negligent backing of a freight train across Wyoming street in the city of Pleasant Hill, Cass county, Missouri, in the nighttime, without having a watchman at said crossing to warn travellers of the approach of said train, and without having a brakeman on the rear end of said train to notify plaintiff of the backing of the train over the crossing, and without having a light on the rear of said train to signal its backing.    The answer was a general denial and a plea of contributory

negligence. Reply denied all new matter. The evidence tends to establish the following facts:

Miss Bertha Montgomery, at the time of the injuries complained of, was seventeen years old, and resided with her parents in Pleasant Hill, an incorporated city, Cass county, Missouri, with a population of about two thousand inhabitants. On Sunday night, October 29, 1899, she had attended services at the Christian church in that city with her older sister, Miss Sadie Montgomery, and a young brother, Clarence. After the service, these three started home in a single buggy, drawn by a gentle horse. The church was north of the Missouri Pacific railway, which divided the business portion of the city from the residence part.

Plaintiff's parents lived in the southwest part of the city, and in returning home that night she and her sister and brother were required to cross defendant's tracks on Wyoming street, one of the principal thoroughfares of the city, over which crossing there was much travel, both by pedestrians and vehicles. Across this street the defendant maintained three tracks. The one on the north is designated in the evidence as the house or storage track; the center one as the main track, and the one on the south as the L. & S., or Lexington and Southern track; Pleasant Hill being the point at which the defendant's railroad from Joplin and the south connects with its main line between Kansas City and St. Louis.

Owing to the great number of trains operated every day and night over this crossing and the large amount of travel by the citizens over this street, the defendant company had, for a long time prior to the night of October 29, 1899, kept a flagman at this crossing to warn and advise travellers of the approach of its trains and to prevent accidents and collisions, and the fact that said flagman was so kept was known to the plaintiff. The night was dark and it was about nine o'clock when the plaintiff and her sister and brother reached the crossing.

The evidence on behalf of the plaintiff was that when her party reached a point known as Maloney Smith's corner, or the corner of Cedar and Lake avenue or Miller street, about two blocks from the crossing, they heard an engine bell down in the southeast part of the city, the direction in which defendant's railroad ran from the crossing on Wyoming street. Thereupon they checked their horse and drove in a walk and listened for a train. Their buggy had no side curtains up at the time. When they reached a point known as Swarthout's corner about twenty-seven feet north of the house track, they came to a complete stop and waited some fifteen or twenty seconds to ascertain if the train was coming and not hearing any signals, either bell or whistle, and not seeing any train or lights to indicate the approach of one, they started on, their horse walking towards the crossing. They testified they looked both ways and listened and heard no train and saw no flagman and thereupon they proceeded over the crossing.

It was agreed that by actual measurement Swarthout's corner was twenty-seven feet from the north track, and it is twenty feet from this north track to the main track, and from the main track to the L. & S. or south track it is eight feet four inches, and the width of each of these tracks is four feet eight inches.

Being unable to see or hear any train moving toward the crossing from the southeast, or the west, and seeing no lights and receiving no signal from the watchman or flagman, they drove on, keeping a lookout in both directions. While on the south, or L. & S. track, a freight train backed against their buggy and demolished the buggy and seriously injured the plaintiff and her sister. The horse was not injured. The evidence tends quite conclusively to show that prior to the plaintiff's reaching the crossing a freight train from Kansas City, consisting of some twelve cars, had reached the crossing and the rear end had been cut off and was standing on the switch west of the crossing and the front end of the

train, consisting of about ten cars, had moved across
Wyoming street on the L. & S. track with the engine
headed southeast, and the lights on it were not discernible by plaintiff or her sister and brother. There was no
light on the west end of this portion of the train and
no brakeman on it with a lantern. The engine was some
three hundred and twenty-five feet southeast of the
crossing. They heard no signal of the backing of the
train.

When plaintiff was knocked out of the buggy she
fell under this train moving back west, and she caught
hold of an iron bar under the car and clung to it until
she was dragged one hundred and five feet. She was
dragged over rocks, cinders and gravel and thrown
against the iron rails. She was wounded and bruised
from head to foot, and her right leg and knee permanently injured and lacerated. Her flesh was torn loose
from the bone and the ligaments on the right knee cap
and the cap torn loose. The left leg also received a
deep gash and her hip was bruised until it was black.
Her head received a deep gash. Her clothing was almost
entirely torn from her body and her right foot mashed
and bruised. She was confined to her bed from October
29 until March. At the time of the trial she was not
able to bear any weight on her left leg. All the strength
had gone out of it. She had no control over it. She
was unable to do any work of any kind, and could not
go to school. She testified her suffering had been almost
intolerable. A rubber cap had been adjusted to her left
knee and without it she could not walk at all. As to
the nature and extent of her injuries she was fully corroborated by two physicians, Doctors Smith and Warden, both of whom testified she was permanently injured
and that the ligaments supporting the knee cap would
never be supplied. The defendant declined to offer any
proof controverting the extent of her injuries and announced that it would stand upon the proposition that
it was not liable.

As to the absence of any light on the rear end of the train when it struck plaintiff's buggy and that there was no flagman on the crossing when the buggy started across the crossing and the failure of the trainmen to signal the backing of the train, other witnesses who crossed a few minutes before, and some who followed close behind, corroborated the plaintiff and her brother and sister.

On the part of the defendant the evidence tended to prove that the rear brakeman was standing near the western line of the crossing and was signalling the train to back up and that the flagman also was waving his lantern on the crossing, either to plaintiff or the engineer to back up; that there was a train down about the water tank east of the depot headed west with a headlight burning, and there was evidence that the rear end of the freight train, the part that backed over plaintiff's buggy, could be seen from forty to sixty feet away; that several witnesses saw the train standing there just prior to the accident as they passed over the crossing. Other witnesses testified that the way they determined the train was there was because it shut off the depot and lantern lights when they passed south of the west end of it, or when it moved between them and the depot lights. There was also evidence tending to show that the bell was ringing when the train began to back over the crossing. In a word, the evidence furnished a case of strongly conflicting evidence as to whether the section of the train which backed over the buggy was visible to plaintiff or by the exercise of ordinary care on her part could have been seen by her and her sister and brother in time to have avoided the injury before attempting to drive across the crossing of Wyoming street and also as to the presence of the flagman and the giving of signals.

Under this state of the evidence the court gave the following instruction of its own motion:

"2.    If the jury believe from the evidence that Wyoming street is a public highway in the city of Pleas-

ant Hill, Missouri, along which persons were in the habit of riding and driving, and that the defendant operated a line or lines of railway across said highway, then it became and was the duty of the defendant in moving its cars across said highway, to exercise ordinary care and caution to prevent collision with persons or conveyances moving thereon; and by ordinary care and caution is meant such a degree of care and caution as persons of ordinary and reasonable prudence engaged in like business would exercise under like circumstances, and a failure to exercise such care, if such existed, would constitute negligence.

"Now, if the jury believe from the evidence that on October 29, 1899, the plaintiff, in company with other parties, was driving in a buggy along said highway, and while in the exercise of ordinary care and caution, both on her part and on the part of the driver of said buggy, drove upon the track of defendant, and that defendant then and there was guilty of negligence, as negligence is herein above defined, in backing a train of its cars so that said train struck the said buggy, while upon defendant's track in said highway, by which plaintiff was thrown out and injured, then your verdict will be for the plaintiff; and the ordinary care and caution required to be exercised by the plaintiff and said driver in driving on said track at that time and place was that which a reasonably prudent person would have exercised under like circumstances." Defendant at the time excepted to the giving of said instruction.

Plaintiff's instructions numbered three and four were given, and read as follows:

"3. The jury are instructed that if they find for the plaintiff they will assess her damages at such sum as they believe from the evidence will compensate her for the bodily pain and mental anguish, if any, which she has suffered, together with such sum as will compensate her for any permanent injury, if any, which they may believe from the evidence she has sustained by

reason of the injury in question, and for the pain and
suffering, if any, which they may believe from the evi-
dence she will suffer in the future by reason of said
injury, all not to exceed the sum of fifteen thousand
dollars.

"4. The court instructs the jury that they are the
sole judges of the credibility of the witnesses and of the
weight to be given to their testimony, and if they believe
from the evidence that any witness has knowingly and
willfully sworn falsely as to any material fact in the
issues in this case, they are at liberty to disregard the
whole or any part of the testimony of such witness."

Defendant objected to the giving of each of said
instructions asked by plaintiff.

The court then gave of its own motion instructions
numbered 1, 2, 3, 4, 8, 9, which read as follows:

"1. If the jury believe from the evidence that
defendant's switchman, Blakey, was standing near the
switch target of the L. & S. track, immediately west of
Wyoming street sidewalk, with his lighted lantern in his
hand, and that there was at the time no obstacle between
him and plaintiff, and that he signalled to plaintiff with
his lantern, or to the train crew in the east, to stop, so
that said signal could, by the exercise of ordinary care
on her part, have been seen by plaintiff, before sustain-
ing the injury complained of, in time to have avoided
said injury, then she is not entitled to recover in this
action.

"2. The court instructs the jury that if you find
and believe from the evidence in this case, that the plain-
tiff and the person driving the vehicle in which plaintiff
was riding, had knowledge of the fact that a train of
cars was, at the time, in the switch yards at Pleasant
Hill, Missouri, and with such knowledge approached the
railroad crossing at Wyoming street, in said city of
Pleasant Hill, then it became the duty of plaintiff, before
undertaking to cross the railroad tracks at said Wyom-
ing street crossing, either by her sense of hearing or by

her sense of sight, to determine whether or not any train of cars was about to cross said street at said crossing before undertaking to cross the same, and if necessary to stop at such distance before reaching said crossing as would enable her to determine this fact, and if you find and believe from the evidence that she failed to do so, then your finding must be for the defendant.

"3.   The admitted facts in this case disclose, that from the north rail of the main track to the north rail of the L. & S. track, the distance was thirteen feet four inches.  If, therefore, the jury believe from the evidence that without any lights a person in the exercise of ordinary care could have seen a moving box car at the rear of defendant's train, at such a distance therefrom as to be able to stop and avoid a collision, then it was the duty of plaintiff before passing over defendant's main track to stop at a reasonable distance therefrom for the purpose of learning of the approach of said train, and preventing a collision.  If she failed to do so, and by reason thereof caused or contributed to the injuries complained of, she is not entitled to recover in this action.

"4.   If the jury find and believe from the evidence that the watchman, Lock, with a lighted lantern in his hand, was standing near the middle of Wyoming street, at the time the plaintiff and the parties with her approached the railroad crossing, and that the plaintiff or the driver of the vehicle in which she was riding, by her exercise of ordinary care and caution, could have, by means of said light, seen and observed the moving cars, in time to have stopped before colliding therewith, and did not stop, then your finding and verdict must be for the defendant.

"8.   If the jury find and believe from the evidence that the night was so dark that a moving box car or cars could not have been seen except a person was within a short distance thereof, then it was the duty of the plaintiff to exercise in a greater degree her sense of hearing,

to determine the fact as to whether or not there was any danger at said crossing from trains or moving cars, and if you find and believe from the evidence that by the exercise of her sense of hearing in a manner that an ordinarily careful and prudent person could have done under the same circumstances, in view of the fact that she could not see, that she could have heard and thereby known of the approach of a moving car or cars in time to have avoided a collision, then and in that instance the plaintiff would be guilty of such contributory negligence as would preclude her from recovering in this cause and your verdict should be for the defendant.

"9. If the jury believe from the evidence that watchman Lock, with a lighted lantern in his hand, was standing in Wyoming street, within eight or ten feet of defendant's main track, when plaintiff passed over the latter, and said watchman either signaled to plaintiff or to the train crew with his lantern, then the plaintiff is not entitled to recover, and your verdict must be for the defendant, provided you further find that plaintiff saw such signal or by the exercise of ordinary care and prudence could have seen such signal in time to have stopped the horse and buggy in time to have avoided the accident or collision."

The court refused instructions lettered "A," "B," "C," "D," and "E," asked by defendant as follows:

"A. If the jury believe from the evidence that the night was so dark that a moving box car without lights could not have been seen ten feet away, then it was the duty of plaintiff to have stopped before crossing the main track, and looked for the approach of the train. If by the exercise of reasonable care on her part she could, by so doing, have learned of the approach of said train in time to have avoided the injury complained of, then she is not entitled to recover and your verdict must be for the defendant.

"B. If the jury believe from the evidence that watchman Lock had a lighted lantern in his hand and

gave any kind of signal therewith, to either plaintiff or the train crew while upon Wyoming street, within ten feet of defendant's main line thereon, then the plaintiff is not entitled to recover regardless of all other facts.

"C.  While the plaintiff, Sadie Montgomery is a competent witness to testify in her own behalf yet the jury in determining what weight, if any, they will give to her testimony, have a right to consider her interest in the result of this litigation, and what she has testified to against her interest, if anything, is to be taken as true, and what she has testified in her own favor is to be give only such weight as the jury may believe from all the evidence in the case it is entitled to.

"D.  If the jury believe from the evidence that watchman Lock, with a lighted lantern in his hand, was standing near the middle of Wyoming street within eight or ten feet of the defendant's main track when plaintiff passed over the latter and sustained the injuries complained of, then plaintiff is not entitled to recover, and your verdict must be for the defendant.

"E.  If the jury believe from the evidence that defendant's switchman, Blakey, was standing near the switch target of the L. & S. track, immediately west of Wyoming street sidewalk, with his lighted lantern in his hand, and that there was at the time no obstacle between him and the plaintiff and that he signalled to said plaintiff with his lantern or to the train crew in the east to stop, so that said signal could have been seen by the plaintiff, then she is not entitled to recover in this action."

The court gave the following instructions asked by defendant.

"V.  If the jury believe from the evidence that both plaintiff, and defendant's servants failed to exercise such care and caution as ordinarily prudent persons would have exercised under similar circumstances, at the time and place of accident, then the plaintiff is not entitled to recover and your verdict must be for the defendant.

"VI.   By the term of negligence, as used in all the instructions given herein, is meant the want of ordinary care, and by the term 'ordinary care' is meant such care as adult persons of ordinary prudence and caution would exercise in the same situation and under the same circumstances. If, therefore, the jury believe from the evidence that plaintiff was guilty of negligence which directly contributed in any degree to the injuries complained of, then your verdict must be for the defendant, although you may also believe that defendant's servants were likewise negligent.

"VII.   In arriving at your verdict in this cause, it is your duty to take into consideration all the facts and circumstances detailed in the evidence, the interest, if any, which the witnesses testifying have in the result of the litigation; and if the jury believe that any witnesses have knowingly and willfully sworn falsely as to any material matter in issue, then you are at liberty to disregard the whole or any part of the testimony of such witness."

Under the instructions the jury returned a verdict for plaintiff for $8,500.   Motions for new trial in arrest were duly filed and overruled and exceptions saved.

I.   The first proposition advanced for a reversal of the judgment of the circuit court is the refusal of defendant's instruction designated by the letter "C." That instruction is in these words:

"While the plaintiff, Bertha Montgomery, is a competent witness in her own behalf, yet the jury in determining what weight, if any, they will give to her testimony, have a right to consider her interest in the result of this litigation; and what she has testified to against her interest, if anything, is to be taken as true, and what she has testified to in her favor is to be given only such weight as the jury may believe from all the evidence in the case it is entitled to."

Among other instructions the court gave the follow-

ing on the credibility of witnesses, to-wit, instruction lettered VII given at the instance of defendant:

"In arriving at your verdict in this cause it is your duty to take into consideration all the facts and circumstances detailed in evidence, the *interest, if any, which the witnesses testifying have in the result* of the *litigation,* and if the jury believe that any witness has knowingly and willfully sworn falsely as to any material matter in issue, then you are at liberty to disregard the whole or any part of the testimony of such witness."

Perhaps no instruction given in criminal cases has been so persistently assailed by counsel for. the defense as this instruction "C," asked by defendant in this case.

It has usually been given in cases where admissions or confessions of the defendant have been proven, wherein, while confessing certain damaging facts, he has, at the same time, sought to palliate or excuse his conduct.

It has been strongly urged that the instruction is in a sense a comment upon the evidence by the court and an invasion of the province of the jury to weigh the evidence, but it has been sustained. In civil cases while it has been approved in some cases on the state of facts developed, in others, where the court has, as it did in this case, given a general instruction on the credibility of witnesses, and authorizing the jury to take into consideration "the interest of the witnesses in the *result of the litigation,*" it has been ruled not error to refuse it. [Dahlstrom v. Railroad, 108 Mo. 1. c. 540; Ephland v. Railroad, 137 Mo. 1. c. 198.]

While this instruction was held not to be error in Feary v. Railroad, 162 Mo. 105, there was no criticism of the former decisions of this court above noted, and it was obviously not the intention of the court to overrule them. A careful scrutiny of the plaintiff's evidence does not disclose any such admission on her part adverse to her right to recover as made it incumbent on the trial court to give this instruction and thereby indicate to the

jury that in the opinion of the court·such was the effect of her evidence.

We think the court went as far as the testimony justified, when it directed the jury that in weighing plaintiff's evidence they should take into consideration *her interest in the result of the action.* We have often ruled that it is not error to refuse instructions however correct they may be as abstract legal propositions when other instructions given fairly presented the case to the jury, or when the facts in evidence did not call for them. In view of the instructions given and the testimony of the plaintiff we think no error occurred in refusing instruction "C" prayed by defendant. [Schafstette v. Railroad, 175 Mo. 142.]

II. By an unfortunate oversight the writer misapprehended the stipulation correcting the error in the abstract of record, and confused the saving of an exception to the second instruction by plaintiff with defendant's exception thereto. We cheerfully make amends by recalling our statement that no exception was saved by defendant, as the record and stipulation both show the defendant did save its exception to the said instruction.

The objection urged to this instruction is that it did not confine the jury to the specific charges of negligence pleaded in the petition, but gave the jury a roving commission to draw upon their imagination to convict the defendant upon supposed negligence not pleaded. The learned counsel indulges in the supposition that the jury might have concluded that it was not a proper thing for defendant to switch its trains across a thoroughfare in a city like Pleasant Hill, or should have had an overhead crossing, or that they might have concluded the defendant ought to have maintained gates at this crossing, or was moving its trains at too great a speed at the time of the collision, or should have lighted the crossing with a street lamp. The petition only alleged negligence in the backing of the train across Wyoming street crossing

without giving any signal or warning; that the defendant for a long time had been in the habit of keeping a flagman at this crossing to warn travellers about to cross of the approach of its trains but on the night in question there was no flagman there to warn plaintiff and there was no light on the rear car of the backing train and no brakeman stationed thereon or other person stationed at said crossing to give warning of the backing of said train.

The substantial charge of negligence is the negligent backing of the train across the crossing of Wyoming street without warning to travellers and pedestrians who were about to cross the same on the street, either in the shape of lights or brakeman or flagman to give notice of its approach. Recurring now to the instruction set out in the statement, it will be observed the court by a general construction defines, first, what duty the law devolved upon the defendant at the place of this accident; and this, it tells the jury, was "in moving its cars across said highway to exercise ordinary care and caution to prevent collision with persons and conveyances moving thereon," and then defines such ordinary care and caution to be that degree of care and caution which persons of ordinary and reasonable prudence engaged in a like business would exercise under the circumstances, and then declares a failure to exercise such care would constitute negligence. Certainly there can be no objection to this preliminary and universally recognized definition of the duty and care required of a railroad in crossing a public highway upon which the public have the right to travel for pleasure or on business.

The instruction then proceeds to advise the jury that if they find from the evidence that on October 29, 1899, the plaintiff was driving along said highway and was herself exercising ordinary care and caution both on her part and that of the driver of the buggy in which

she was riding and while so doing drove upon the track of defendant (laid across said street) and that the defendant was then and there guilty of negligence, as negligence had already been defined, in backing a train of cars so that it struck plaintiff's buggy and she was thrown out, then plaintiff was entitled to recover.

It will be observed the negligence for which plaintiff was entitled to recover was restricted to the negligent backing of the train.

The court was not required to specify various other things which counsel conceive the jury might consider negligence, but confined the jury to the one cause of action, the negligent backing of the train, as alleged in the petition. All the proofs were directed to the failure to give warning of the backing of the train. No evidence was heard of any other default or failure, and it is inconceivable that twelve jurors of ordinary intelligence would have considered negligence of which there was absolutely not a scintilla of evidence.

This is a civil case and the instruction is without fault so far as it goes, and the rule is well established that if defendant thought it too general it should have asked the court to point out the more specific details of the negligence charged in the petition.

But more than this, the defendant in its fifth and sixth instructions was equally general. In its fifth instruction it had the court to instruct the jury that "if they believe from the evidence that both plaintiff and defendant's servants failed to exercise such care and caution as ordinarily prudent persons would have exercised under similar circumstances at the time and place of accident then plaintiff could not recover," and its sixth instruction was a repetition of the definition of negligence and ordinary care which the court had already announced in this instruction numbered 2. But if there should remain any doubt that this instruction numbered 2 was too general, yet when it is read in connection with the instructions numbered 1, 2, 3, 4, 8 and 9 given by the court

of its own motion, all such doubt vanishes. Instructions must be read and considered altogether. It is often not practicable to announce all the law of a case in one paragraph, and hence the various instructions must be read together. Reading the court's instructions it is obvious that they limited the plaintiff's right of recovery to the failure of the flagman and brakeman to give plaintiff warning and excluded her recovery if the jury should find that in fact either the brakeman or flagman gave her warning with their lanterns. But they do not stop at this, but the court went further and directed a verdict for defendant, even though these warnings were not given, if the jury believed that even, without these lights or warnings, plaintiff was guilty of contributory negligence in going upon the crossing when she had knowledge that a train of defendant was in the switch yards, without using her hearing or sight to determine whether or not it was about to cross said street, and if they believed that without lights plaintiff by exercising ordinary care could have seen a moving box car at such a distance therefrom as to be able to stop and avoid a collision, then she could not recover if she so failed to stop.

Particularly restrictive to the negligence alleged in the petition was the fourth and ninth instructions given by the court of its own motion.

In view of the correctness of instruction number 2, as a general proposition, and the specific character of the other instructions given by the court of its own motion, and the whole evidence, we can not seriously conceive that the jury were misled into returning a verdict for plaintiff upon any other ground of negligence than that alleged in the petition. This point therefore is ruled adversely to defendant's contention.

III.   Error is further predicated in the refusal of instructions "A" and "D."

Instruction "A" was fully covered by instructions

numbered 2 and 3 given by the court of its own motion. Those instructions fully defined plaintiff's duty as to stopping, looking and listening before entering upon the crossing, and were as favorable as defendant had a right to ask.

Instruction "D" was properly modified by the court in its ninth instruction. Moreover, instruction "D" as asked is not the law. It is not correct to say that the mere fact that a watchman is at a dangerous crossing is of itself a sufficient warning to travellers not to cross. Having determined that a watchman or flagman is necessary to warn travellers not to cross when trains are approaching, and having maintained him there for a sufficient length of time to apprise the public that he is there for that purpose, it is the duty of defendant to require such watchman to warn travellers of trains, and the court correctly told the jury that the plaintiff was entitled to a signal from him to warn her not to cross. If on the other hand the flagman was not there, as plaintiff's evidence strongly tended to prove, and the custom of keeping him there was known to plaintiff, the plaintiff might well have concluded no trains were expected at that time, and such absence was a potent fact in considering her conduct in proceeding over the crossing.

In this connection the language of the court in Railroad v. Blaul, 70 Ill. App. 518, is peculiarly apposite. In that case it was shown that a flagman was usually kept at the crossing but had left his post when the plaintiff's vehicle reached it.

It was insisted in that case that it was the duty of a traveller at said crossing to wait for a signal from the flagman that it was safe to cross, but the court said:

"But we think this is a misapprehension of the duty of a flagman under the ordinance put in evidence, and is not according to the general understanding of the public, nor the most usual custom of flagmen on such duty. It is only where there is danger caused by the approach

of trains that a flagman displays any sign, or gives any notice to the travelling public.   When it is safe to cross, the flagman does nothing, as a general rule, but when there is danger he gives notice, or should do so.   This being the almost universal custom, we think Van Garvin, knowing that a flagman was usually stationed at this crossing, had a right to rely on the presumption that he was at his post and would do his duty, and that in the absence of any warning or signal of danger, he was not chargeable with negligence in proceeding to cross the tracks. . . .   They no doubt relied upon the presumption that the flagman was at his post, and would do his duty warning them of danger, if it existed.   This presumption they had a right to indulge and to act upon. The flagman's duty is to know of the approach of trains and to give timely warning to persons attempting to cross the railroad track, and the public have a right to rely upon a reasonable performance of that duty.'' [Citing Railroad v. Hutchinson, 120 Ill. 587.]

In Railroad v. Hutchinson, 120 Ill., supra, the Supreme Court of Illinois said: ''The flagman's duty is to know of the approach of trains and to give timely warning to all persons attempting to cross the railroad track and the public have a right to rely upon a reasonable performance of that duty.''

And this is the consensus of judicial opinion in this country.  [Railroad v. Jennings, 157 Ill. 274; Palmer v. Railroad, 112 N. Y. 234; Railroad v. Stegemeier, 118 Ind. 305; Evans v. Railroad, 88 Mich. 442; Beach on Contrib. Negligence, sec. 190; 2 Shearman & Redfield on Neg., sec. 466, note 8; 2 Elliott on Railroads, sec. 1157.]

But it is earnestly insisted by counsel for defendant that, while the evidence established that the company had for a considerable time prior to this accident maintained a flagman at this crossing to warn travellers, this was a self-imposed and voluntary precaution adopted by the defendant, and this conduct of the defendant con-

ferred no right of action on plaintiff, and defendant was at liberty to withdraw him at any time, and we are cited to Barney v. Railroad, 126 Mo. 392, and cases therein cited and other similar cases.

The Barney case has little in common with the question here presented. That was a case of a minor child trespassing in the private yards of the railroad, and while it appeared the defendant had instructed its yardmen to keep boys out of the yard, the child managed to get in and was hurt climbing on a train. It was correctly and properly held that the effort of the company to prevent children trespassing in no way excused the trespasser and the neglect of the yardmen to see the boys gave him no right of action. Whereas in this case the plaintiff was travelling upon a public highway which she had a right to use and was in no sense a trespasser, and at the crossing of this highway the defendant, recognizing the propriety of warning the public of the approach of its trains, had for a considerable time maintained a flagman to advise the public of the approach of its trains. It was shown that this was well known to plaintiff and the absence of the flagman or his failure to warn plaintiff is invoked as affecting the question of care and caution required of plaintiff in the circumstances in attempting to cross in his absence and without any signals.

On this point Judge Elliott in his work on Railroads, vol 3, p. 1754, sec. 1157, says: "Although not originally under obligation to do so, if the company has maintained a flagman at a particular crossing for a long time and his presence is notorious, travellers have, within limits, a right to assume, when he is absent, that no train is approaching, and his absence or permanent removal without notice to the public is evidence of negligence." Citing numerous cases in note 1 to this text.

And the same effect, the law is declared in 2 Shearman & Redfield on Negligence, sec. 466, and the authorities cited sustain the text. The action of the de-

fendant in maintaining a flagman at this public and much-used crossing was most commendable and after the public had become accustomed to seeing the flagman there and advised of his duties, it can not complain that travellers lawfully using the crossing regulated their conduct to some extent upon the implied assurance that the flagman would be there when trains were passing or approaching and finding no one when they came to the crossing would presume no train was near. To assume otherwise would be against all ordinary human experience. We think the fact that defendant voluntarily adopted the rule of maintaining the flagman there and continued to do so until the plaintiff and the public knew of the custom, most materially affects the question of prudence required of plaintiff when she reached the crossing on the night in question, and that by its course of conduct having invited the travelling public to expect a warning of approaching trains, it was evidence of negligence that on the night in question no flagman was there to warn plaintiff of the switching of cars across the street, and that plaintiff was not chargeable with gross negligence in attempting to cross the tracks in the absence of such flagman or a signal from him not to attempt to do so. [Gurley v. Railroad, 104 Mo. l. c. 232; Gurley v. Railroad, 122 Mo. 150.]

IV. As to the proposition that plaintiff is precluded from recovering because her evidence tends to prove that the bell on the engine was ringing at the time she attempted to cross, we think it is clearly untenable. While there was a conflict between plaintiff's witnesses and defendant's on this point, the evidence on the part of the plaintiff herself and those with her was in substance that when they were up at the corner of Cedar and Lake streets by Smith's grocery, two blocks or more from the crossing, they heard an engine bell ring three or four times and the puff of the engine and then it stopped. That bell was east of the depot and the depot

was three hundred and twenty-two feet east of the Wyoming street crossing. She heard no bell after that, nor any other signal or noise indicating the train was backing or moving west. Her evidence also was to the effect that after hearing this momentary ringing of the bell below the depot they drove on slowly, stopping and listening and looking, and seeing and hearing nothing to indicate a train was coming, they then slowly drove on to the crossing. The conflict on this point was a matter for the jury to settle, but it is too obvious for discussion that, upon the whole, neither this court nor the circuit court can or could say as a matter of law plaintiff's evidence precluded her recovery on the ground that she recklessly drove in front of a moving train, of the approach of which she was fully apprised. The fact that she testified she was looking for a train to be sure there was none, discloses caution and prudence rather than gross negligence.

V.    The same observation may be made as to the presence of Lock, the flagman on the crossing. If defendant's witnesses are to be believed unquestionably he was there, but if plaintiff's witnesses were credited by the jury, as they evidently were, he was not there. It was the province of the jury to settle that conflict and we are not at liberty to disregard the finding of the jury where there was substantial evidence upon which to base it. This is too well settled to admit of discussion.

VI.    A demurrer to the evidence was presented at the close of plaintiff's case and again at the conclusion of all the evidence and was overruled on each occasion, and this is urged as error.

It is axiomatic that a demurrer to evidence admits the fact the evidence tends to prove and in passing upon it the court is required to make every inference of fact in favor of the party offering the evidence which a jury might, with propriety, have inferred in his favor, and if when viewed in this light it is sufficient to support a ver-

Montgomery v. Railroad.

dict in his favor, the demurrer should be overruled. [Buesching v. St. Louis Gas Light Co., 73 Mo. 219; Donohue v. Railroad, 91 Mo. 357.]

Looking at plaintiff's case in the light of this settled principle she established that on the night of October 29, 1899, she was a resident of Pleasant Hill, a city of two thousand inhabitants. She was in company with her sister and brother returning from church to her home. To reach her home she was required to travel along Wyoming street intersected by defendant's railroad tracks. This crossing was one much used by travellers in vehicles and pedestrians, and so great was the travel on it and so numerous the trains which passed over it, the defendant deemed it prudent in order to prevent collisions of its trains with those whose business or pleasure saw fit to use it, to maintain a flagman thereat to warn the public of the approach of trains. Her evidence tended strongly to prove that when some two or more blocks from the tracks or crossing, she heard the ringing of an engine bell and several puffs of the engine down in the eastern part of the city below the depot. The depot was three hundred and twenty-two feet east of the crossing on Wyoming. When she heard this bell she caused her brother who was driving to check his horse from a trot to a walk. The night was very dark. Driving on toward the crossing and listening they came to a point twenty-seven feet from the northernmost of defendant's three tracks and stopped to ascertain if a train was approaching the crossing. They stopped some fifteen seconds and listened and endeavored to discover if a train was moving toward the crossing and hearing neither a whistle or a bell or any other noise of a train, they drove slowly upon the crossing. They looked and saw nothing of the flagman who usually stood at the crossing at night with a lantern and saw no lights upon a train or other lights. She and her sister and brother all testified they kept a constant lookout in both directions but discerned no indication of a moving

train. They passed safely over the north or house track and the main track and were on the third or L. & S. track, when without any warning the front or east end of a freight train moving from the east, with no light on the rear end and no brakeman on it, suddenly struck the buggy on the east side and crushed it, throwing plaintiff under the train, and in her endeavor to save herself she caught on a bar or rod under the car and was dragged one hundred and five feet over a rough surface and was seriously and permanently wounded and injured.

There was much evidence of disinterested witnesses who had immediately preceded her and some who were following behind her that no bell was ringing or whistle blowing. There was no light on the rear end of the car that struck her buggy. The flagman was not on the crossing and gave her no warning of the backing of the car. She knew the railroad tracks ran across the street at this crossing and was familiar with it. She knew a flagman had been kept there for a long time to warn travellers of trains. The horse she was driving was a gentle animal accustomed to trains and not frightened by them. The evidence further tended to prove that the train had come in from the west and was headed to the east. There were some ten freight cars in the eastern section of the train which backed over her. The west end containing several cars had been cut off and was standing stationary at a switch target west of Wyoming street crossing. She did not see the lantern of the rear brakeman who was with this part of the train and no signal from him. The buggy in which she rode had no side curtains to obstruct her view east or west. There was a lantern sitting on the ground at the flagman's cabin and some depot lights at the depot three hundred and twenty-two feet east of the crossing. She could not see the headlight of the engine pulling the train which backed over her as it was headed southeast and stood east of the station house. Owing to the dark-

ness neither she nor her sister or brother saw or could see the train standing east of the Wyoming crossing before or after it began to move. This in brief was the evidence for the plaintiff. That she was not guilty of contributory negligence in attempting to go over this crossing in the circumstances detailed is absolutely clear.

This court, in Donohue v. Railroad, 91 Mo. l. c. 364. said in a similar case: "Neither seeing nor hearing a train, nor the sound of a bell, for none was rung, the deceased had a right to presume that he could pursue his course without danger. What is said in the case of Kennayde v. Railroad, 45 Mo. 255, may be appropriately applied here. It is there said: 'The citizen who on a public highway approaches a railway track, and can neither see nor hear any indications of a moving train, is not chargeable with negligence for assuming that there is no car sufficiently near to make the crossing dangerous. [Ernst v. Railroad, 35 N. Y. 9.] He has a right to assume that in handling their cars the railroad company will act with appropriate care; that the usual signals of approach will be seasonably given and that the managers of the train will be attentive and vigilant. In Newson v. Railroad, 29 N. Y. 390, the rule is stated thus: "The law will never hold it imprudent in anyone to act upon the presumption that another in his conduct will act in accordance with the rights and duties of both." ' " So in this case, the plaintiff was using a public highway upon which she had a perfect right to travel. The very commonest prudence on the part of the defendant dictated that in backing its train across this much-travelled highway on a dark night it should give signals and warning of its intention to back over the crossing.

The slightest prudence it would seem would have suggested the placing of a light on the rear car or to have had a brakeman thereon with a lantern to give warning, and that the engineer would ring his bell or sound his whistle to give warning of his intention to back. And, as already said, after having deemed a flagman

necesary for the protection of the public using this cross-
ing and having maintained him there for a long time, it
was negligent in not having him there on this night to
warn the people returning from church of the backing
and moving of this train, and the absence of the flagman
was well calculated to lull plaintiff into a sense of secur-
ity on going over the crossing in the absence of any
other signals or lights from the moving train.

We have examined the evidence with great care and
find no reversible error in the record. No serious con-
tention is made that the verdict is excessive, and consid-
ering the youth of the plaintiff and the permanent and
painful nature of the injuries she received, we find no
evidence of prejudice or passion in the amount of the
verdict. The judgment must be and is affirmed. *Bur-
gess* and *Fox, JJ.,* concur.