CLAUDE STEELEY v. J. M. KURN and JOHN G. LONSDALE, Trustees of the ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellants.—146 S. W. (2d) 578.

Division One, January 4, 1941.

*E. G. Nahler, Charles E. Hassett* and *Mann & Mann* for appellants.

*Sylvan Bruner, Vance Julian* and *Sizer & Myers* for respondent.

76

GANTT, J.—Action under the Federal Employers' Liability Act. Plaintiff and three fellow employees (Murphy, Mahan and Shirley) were lifting a steel rod (weighing 455 pounds) from the floor of the roundhouse to a wagon for movement to the machine shop. Plaintiff and Murphy lifted one end of the rod. Shirley and Mahan lifted the other end of the rod. Plaintiff testified that when the rod had been lifted "crotch high" Murphy suddenly dropped (released his hold)

the rod, thereby causing additional weight on plaintiff which twisted his body and injured him. He also testified that he was looking at Murphy at the time and that Murphy "just deliberately turned it loose."

The three fellow employees and Garrison, the foreman who was present, testified that no such thing occurred; that when the rod had been lifted twelve inches from the floor, plaintiff released his hold on the rod, stating that he "had a twitch in his back." They also testified that Murphy, Mahan and Shirley continued lifting and placed the rod on the wagon.

On cross-examination by plaintiff there was testimony as follows: "Murphy testified that he didn't turn loose of the rod with either hand, nor did he stumble nor did the rod slip from his hand in any manner whatsoever. Mahan testified that there was no slip or stumble by either of the men who had hold of the rod. Shirley testified that neither Murphy's hands, nor Mahan's hands, or his hands slipped from the rod, and that none of the men's feet slipped or stumbled in any way."

The negligence relied upon by plaintiff follows:

"In that the defendants' agent and employee Murphy, who was assisting the plaintiff in lifting one end of the connecting side rod, negligently and carelessly, and without notice or warning, released his hold on said rod, which they were loading, and caused the entire weight of the connection side rod to be put upon the plaintiff.

"In that defendants, their agents, servants, and employees, and in particular one Murphy, engaged with plaintiff in lifting the heavy said connection side rod, failed to abide by the well-known and long-established custom, and failed to warn plaintiff that he was going to turn loose of his side of the heavy rod."

The jury believed, or pretended to believe, the testimony of plaintiff, and, under the court's instructions, returned a verdict for $10,000. Judgment accordingly and defendants appealed.

■ Defendants contend for a directed verdict at the close of all the evidence. The question is here for review. Of course, this question must be determined on plaintiff's theory of the facts.

We agree with the plaintiff that in ruling the question we should consider the testimony of Murphy, Mahan and Shirley, above set forth, with the testimony of the plaintiff that he was looking at Murphy at the time, and that Murphy "just deliberately turned it loose."

■ We also agree with the plaintiff that said testimony of Murphy, Mahan and Shirley, considered with the testimony of plaintiff that Murphy "just deliberately turned it loose," shows that Murphy deliberately and intentionally dropped the rod.

If Murphy deliberately and intentionally dropped the rod in the course of his employment *and in furtherance of the work of the*

*employer's business,* his conduct in doing so was negligence within the meaning of the Federal Employers' Liability Act. The rule is stated as follows:

" 'Negligence' is a word of broad significance and may not readily be defined with accuracy. Courts usually refrain from attempt comprehensively to state its meaning. While liability arises when one suffers injury as the result of any breach of duty owed him by another chargeable with knowledge of the probable result of his conduct, actionable negligence is often deemed—and we need not pause to consider whether rightly—to include other elements. Some courts call willful misconduct evincing intention or willingness to cause injury to another gross negligence. [Bolin v. Chicago, St. P., M. & O. Railway Co., 108 Wis. 333, and cases cited. And see Peoria Bridge Association v. Loomis, 20 Ill. 235, 251, C., R. I. & P. Ry. Co. v. Hamler, 215 Ill. 525, and cases cited. Mercer v. Corbin, 117 Ind. 450.] And it has been held that the use of excessive force causing injury to an employee by the superintendent of a factory in order to induce her to remain at work was not a trespass as distinguished from a careless or negligent act. [Richard v. Amoskeag Mfg. Co., 79 N. H. 380, 381.] While the assault of which plaintiff complains was in excess of authority conferred by the employer upon the foreman, it was committed in the course of the discharge of his duties and in furtherance of the work of the employer's business. As unquestionably the employer would be liable if plaintiff's injuries had been caused by mere inadvertence or carelessness on the part of the offending foreman, it would be unreasonable and in conflict with the purpose of Congress to hold that the assault, a much graver breach of duty, was not negligence within the meaning of the act. [Johnson v. Southern Pacific Co., supra; Schlemmer v. Buffalo, R. & P. Ry., 205 U. S. 1, 9, 10.]" [Jamison v. Encarnacion, 281 U. S. 635, l. c. 641.]

However, if the act of Murphy in deliberately and intentionally dropping the rod was not "in furtherance of the work of the employer's business," the said act was not negligence within the meaning of the Federal Employers' Liability Act. The rule follows:

"The ground on which the Railroad Company was held was that it had negligently employed a dangerous man with notice of his characteristics, and that the killing occurred in the course of the engineer's employment. But neither allegations nor proof present the killing as done to further the master's business, or as anything but a wanton and willful act done to satisfy the temper or spite of the engineer. Whatever may be the law of Mississippi, a railroad company is not liable for such an act under the statutes of the United States. The only sense in which the engineer was acting in the course of his employment was that he had received an order from Green which it was his duty to obey—in other words that he did

a willful act wholly outside the scope of his employment while his employment was going on.'' [Davis v. Green, 260 U. S. 349, l. c. 351, 352; C. & O. Ry. Co. v. Bryant, 280 U. S. 404; Dirks v. United Fruit Co., 48 Fed. (2d) 656.]

Of course, Murphy was in the line of his duty and in furtherance of the master's business while lifting the rod. Even so, it would not be contended that the act of ''dropping the rod'' furthered the lifting of the rod. This is not a case in which the servant's personal motive mingled with a furtherance of the master's business. Furthermore, the act of Murphy in ''dropping the rod'' without warning to plaintiff, as required by custom of said railroad yards, conclusively shows that his conduct was malicious. On plaintiff's theory of the facts, it must be ruled that Murphy intentionally, deliberately and maliciously assaulted the plaintiff by ''dropping the rod,'' thereby seriously injuring him. Furthermore, it must be ruled that said act was not in furtherance of the master's business.

Plaintiff cites Karagas v. Railroad Co., 232 S. W. 1100; Wheeler v. Railroad Co., 322 Mo. 271, 18 S. W. (2d) 494; Baker v. Railroad Co., 327 Mo. 986, 39 S. W. (2d) 535; Bolin v. Railroad Co., 84 N. W. 446; Baltimore & P. Railway Co. v. Jones, 95 U. S. 439, 441; Delaware L. & W. Railroad Co. v. Koske, 279 U. S. 7; Montgomery v. Railroad Co., 181 Mo. 477, 79 S. W. 930.

In the Karagas case, l. c. 1101, the plaintiff and three fellow servants, with the assistance of the foreman, removed a handcar northward from the track. There was evidence tending to show that on the removal of the car four or five feet from the track, the foreman released his hold and stepped from the north side of the car that it might be moved farther from the track. At about this time a fellow servant of the plaintiff released his hold on the car, which threw additional weight on the plaintiff and injured him. From this evidence the jury could find that the fellow servant negligently released his hold, thinking the car was to be left only four or five feet from the track. We so understood the facts and cited the Karagas case in the Wheeler case. In the last mentioned case there was evidence tending to show that three fellow servants were moving a large wheel. One of the servants released his hold and moved toward the front of the wheel. It fell and injured the plaintiff. From this evidence the jury could find that the fellow servant negligently released his hold, intending to assist by taking hold of the front of the wheel. The Karagas and Wheeler cases are distinguishable on the facts.

In the Baker case the plaintiff and others were loading ties into a car. There was evidence tending to show that the foreman was dissatisfied with the manner in which the plaintiff was performing his work and pushed him from the car. This conduct of the foreman was in furtherance of the master's business and was negligence

within the meaning of the Federal Employers' Liability Act, as ruled in Jamison v. Encarnacion, supra.

The other cases cited do not rule the question presented in this case.

The judgment should be reversed. It is so ordered. All concur.