EUGENE W. OSMENT ,v. NORMAN B. PITCAIRN and FRANK C. NICODEMUS, JR., Receivers of the WABASH RAILWAY COMPANY, a Corporation, Appellants.—159 S. W. (2d) 666.

Division Two, December 16, 1941.

Rehearing Denied, March 13, 1942.

138

*N. S. Brown, J. H. Miller, Sebree, Shook & Gisler, B. F. Boyer* and *John S. Marley* for appellants.

*Raymond E. Martin* and *Trusty, Pugh, Green & Trusty* by *Guy W. Green, Jr.*, for respondent.

BARRETT, C.—The receivers of the Wabash Railroad appeal from an entered judgment of $35,000.00 in favor of Eugene W. Osment for personal ■■■ injuries. The action is under the Federal Employers' Liability Act, as amended August 11, 1939. [45 U. S. C. A., Sec. 51; 53 Stat. 1404.]

The plaintiff's petition alleges that while he was a member of an interstate switching crew he was standing in the freight house when a messenger boy, John Stalac, walked up behind him and seized him around his neck and shoulder in such a manner that he could not get loose and squeezed him so tight he lost consciousness and fell, fracturing his head on the concrete floor.

The negligence specified is (1) that Stalac was "incompetent, habitually careless, and an improper and dangerous person to have and retain in such employment, and defendant knew he was young, big, strong and had propensities to show his power by scuffling and grappling and violently seizing other employees from behind, and that he was dangerous in and near the employment of other" employees; and (2) that the railroad was negligent and breached its duty to the plaintiff through Finnell, a policeman in the special service department, in that, although Finnell knew of Stalac's propensities and was sitting nearby at the time of the assault, he made no effort to control Stalac or prevent him from injuring the plaintiff.

The plaintiff's proof was that John Stalac habitually engaged in rough horseplay and the railroad had knowledge of the fact. Stalac went to work for the railroad as a boy in the messenger service, later becoming an extra switchman. He was a large, rough fellow. His conduct was described by one member of the plaintiff's switching crew as being playful like a big pup. He was always engaged in horseplay. Another member of the switching crew had seen him scuffling with various employees. The plaintiff described his conduct by saying he was "a fellow that liked to scuffle with fellows." He would grab a fellow and tussle with him, twist his arms and throw him down. Three negroes employed in a warehouse had observed his conduct for several years and he was always grabbing people and scuffling with them. He would bear down on the rear end of a loaded truck as it was being pulled and cause the handle to fly up. Sometimes he would hit a man back of the knees and cause him to fall. He would "grab a fellow rough" and pick him up. Once he grabbed a freight house employee's breast so hard he had to have medical attention. He never acted in anger. His conduct is best described as unnecessarily rough horseplay.

The plaintiff's theory of his right to recover on the first assignment is that the railroad was negligent in knowingly retaining in its employ one who was dangerous to others by reason of his habit of misconducting himself in a manner dangerous to others. The plaintiff says liability attaches even though the employee was acting outside the scope of his

employment. In other words, the plaintiff seeks to apply the tort doctrine of liability for negligently employing or retaining in one's employment a known habitually incompetent or vicious employee to cases arising under the Federal Employers' Act. [Dean v. St. Paul Union Depot Co., 41 Minn. 360, 43 N. W. 54; Zabawa v. Oberbeck, 146 Wis. 621, 131 N. W. 826; Isaacs v. Smith (Mo. App.), 275 S. W. 555; Allen v. Quercus Lumber Co., 171 Mo. App. 492, 157 S. W. 661; Williams v. Missouri Pac. R. Co., 109 Mo. 475, 18 S. W. 1098; 39 C. J., secs. 639-641, pp. 533-536; 2 Shearman & Redfield, Negligence, Secs. 199-200, pp. 456-465; 2 Restatement, Law of Torts, sec. 317, pp. 860-862; Barrentine v. Henry Wrape Co., 105 Ark. 485, 152 S. W. 158; Henry Wrape Co. v. Barrentine (Ark.), 211 S. W. 366.]

The difficulty with applying the plaintiff's theory of liability to this case is that the rights of the plaintiff and the obligations of the defendant depend upon the Federal Employers' Liability Act and the applicable principles of the common law as interpreted by the federal courts. [Missouri Pac. R. Co. v. Aeby, 275 U. S. 426, 48 Sup. Ct. 177, 72 L. Ed. 351, reversing Aeby v. Missouri Pac. R. Co., 313 Mo. 492, 285 S. W. 965; Weiand v. Southern Pac. Co., 34 Cal. App. (2d) 500, 93 Pac. (2d) 1023, certiorari denied, Southern Pac. Co. v. Weiand, 309 U. S. 670, 60 Sup. Ct. 613, 84 L. Ed. 1016. The latter case was decided since Erie R. Co. v. Tompkins, 304 U. S. 64, 58 Sup. Ct. 817, 82 L. Ed. 1188; Annotation 83 L. Ed. 519.]

While the federal courts might recognize the plaintiff's theory of liability and construe the conduct complained of as being negligent, there is one insuperable obstacle to its application here and that is there is neither allegation nor proof that the assault complained of occurred in the course of Stalac's employment. The plaintiff was a switchman and Stalac was a messenger boy in the freight house. Osment testified that they were in separate departments and had no business together. In fact the plaintiff does not seek to impose liability on the railroad by reason of negligent conduct in the furtherance of the master's business or even in the scope of Stalac's employment, but frankly says the "defendants owed plaintiff a duty to exercise reasonable care to so control their servant *while acting outside the scope of his employment* as to prevent him" from harming others by reason of his known hazardous propensity for horseplay. The Supreme Court of the United States, up to the present at least, has refused to impose liability on employers for acts of employees when outside the scope of their employment and not in furtherance of their employer's business. In the controlling opinion, Davis v. Green, 260 U. S. 349, 351, 43 Sup. Ct. 123, 67 L. Ed. 299, Mr. Justice HOLMES said:

"The ground on which the Railroad Company was held was that it had negligently employed a dangerous man with notice of his characteristics, and that the killing occurred in the course of the engineer's

employment. But neither allegations nor proof present the killing as done to further the master's business, or as anything but a wanton and wilful act done to satisfy the temper or spite of the engineer. Whatever may be the law of Mississippi, a railroad company is not liable for such an act under the statutes of the United States. The only sense in which the engineer was acting in the course of his employment was that he had received an order from Green which it was his duty to obey—in other words that he did a wilful act wholly outside the scope of his employment while his employment was going on.''

This view was applied to an interstate employee injured by a man habitually addicted to the vulgar practice of ''goosing.'' [Dewing v. New York Cent. R. Co., 281 Mass. 351, 183 N. E. 754.] There the court said, 183 N. E. 1. c. 755, 756:

''Unquestionably, the assaults were wholly outside the scope of the employment of those guilty of them. . . . The gist of the plaintiff's case is, that the defendant negligently had in its employ at the moment of the injury on August 22, 1927, incompetent and dangerous servants who, uncontrolled by the defendant, made the station an unsafe place for the plaintiff to work.''

Under the federal act, therefore, the master is not liable unless the assault or other conduct complained of was committed by the wrongdoer within the scope of his employment—in furtherance of his master's business—or, unless the act was directed or authorized. [Bocian v. Union Pac. R. Co., 137 Neb. 318, 289 N. W. 372; Jackson v. Chicago, R. I. & P. Ry. Co., 178 Fed. 432; Roebuck v. Atchison, T. & S. F. R. Co., 99 Kan. 544, 162 Pac. 1153, L. R. A. 1917E, p. 741; Griffin v. Baltimore & O. R. Co. (W. Va.), 126 S. E. 571.]

The allegations and proof upon which Osment relies are clearly distinguishable from Jamison v. Encarnacion, 281 U. S. 635, 50 Sup. Ct. 440, 74 L. Ed. 1082. There a foreman assaulted a longshoreman who was loading a barge ''to hurry him about the work.'' And Mr. Justice BUTLER said, 281 U. S. 1. c. 641:

''While the assault of which plaintiff complains was in excess of the authority conferred by the employer upon the foreman, it was committed in the course of the discharge of his duties and in furtherance of the work of the employer's business. As unquestionably the employer would be liable if plaintiff's injuries had been caused by mere inadvertence or carelessness on the part of the offending foreman, it would be unreasonable and in conflict with the purpose of Congress to hold that the assault, a much graver breach of duty, was not negligence within the meaning of the Act.''

And it must have been the above quotation that induced the court to affirm the trial court's judgment in Steeley v. Kurn, 313 U. S. 545, 61 Sup. Ct. 1089. 85 L. Ed. 864; Steeley v. Kurn et al., 347 Mo. 74, 146 S. W. (2d) 578.

Stalac's assault being outside the scope of his employment—not in any manner in furtherance of the railroad's business—unauthorized and not directed, the trial court should not have submitted that assignment of negligence to the jury.

In support of his second assignment of negligence the plaintiff says his case is not based on the violation of any company rule but that the railroad had delegated its common law duty to control the conduct of Stalac, even acting outside the course of his employment, to the special service department and the failure of Finnell to act, under all the circumstances, constituted negligence. His argument is that even though no common law duty required it the railroad had assumed a duty and placed it on the special service department, which included Finnell and his failure to stop Stalac, after knowledge of his past conduct, constituted negligence.

But, since there is no liability for the acts complained of, does it not follow that there could be no duty to guard against them or prohibit them? Even though Finnell, the company policeman, knew of Stalac's propensities, can liability or a breach of duty be predicated on failure to control conduct or acts for which it is not liable in the first place? If the view is once adopted that the master is not liable for the tortious acts of an employee outside the scope of his employment or not in furtherance of his master's business, does not logic compel the application of the same view to this assignment of negligence, even if it stood alone? There is no escape from the conclusion that after all and fundamentally the thing or fact of which the plaintiff complains and says the master was under a duty to guard against is conduct for which the defendant is not liable, a man disposed and impelled to commit assaults admittedly having no connection with the business of a railroad. It follows that a breach of duty cannot be predicated on failure to control the acts complained of unless the view is adopted that the master is liable for the negligent or tortious acts of his employees acting outside the course of their employment, at least under certain circumstances. If the latter were the rule, conversely the master would be liable for failure to guard against or for failure to control the same conduct or acts. If the conduct resulting in plaintiff's injuries was outside the scope of Stalac's employment so that the railroad is not responsible for it we cannot see how there could be any breach of duty or negligence in failing to guard against it or in neglecting to control him. Under such circumstances the plaintiff's theory of liability rests upon the breach of a duty or obligation which the railroad did not owe him. [Chesapeake & O. R. Co. v. Mihas, 280 U. S. 102, 50 Sup. Ct. 42, 74 L. Ed. 207; Atlantic Coast Line R. R. Co. v. Southwell, 275 U. S. 64, 48 Sup. Ct. 25, 72 L. Ed. 157.] "It is essential to show that the defendant was guilty of some breach of duty owed to the deceased in respect to the matter charged as negligence. . . . in order to con-

stitute actionable negligence it must appear that the injury complained of resulted from a failure on the part of the defendant to discharge a duty or obligation which the defendant was under to protect the plaintiff from injury." [MacDonnell v. Southern Pac. Co. (Cal.), 62 Pac. (2d) 201, 202.] There was no common law duty on the part of the railroad to employ guards or policemen for the protection of employees against the violence of one another, at least not for acts outside the scope of their employment. As was said in Atlantic Coast Line R. R. Co. v. Southwell, 275 U. S. 64, 48 Sup. Ct. 25, 72 L. Ed. 157, "In view of the decision in Davis v. Green, 260 U. S. 349, the plaintiff did not attempt to hold the petitioner liable as principal in the act, but relied on its failure to prevent the death. . . . It would be straining the language of the act somewhat to say in any case that a wilful homicide 'resulted' from the failure of some superior officer to foresee the danger and to prevent it."

The argument that the railroad voluntarily created the special service department and thereby assumed the duty to guard against acts of employees outside the scope of their employment does not change the rule. The same views were advanced in St. Louis-San Francisco Ry. Co. v. Mills, 271 U. S. 344, 46 Sup. Ct. 520, 70 L. Ed. 979, where the plaintiff claimed insufficient guards had been provided against the violence of strikers. Mr. Justice STONE said, 271 U. S. l. c. 347:

"The respondent here asserts that the defendant, having assumed to do something, should have done more. But the bare fact that the employer voluntarily provided some protection against an apprehended danger, by undertaking to do something which involved no special knowledge or skill, can give rise to no inference that it undertook to do more. Respondent therefore relies on the breach of a duty which does not exist at common law, and of whose genesis in fact it offers no evidence."

And this is all aside from the question of whether or not the failure of the guard, Finnell, to act was the proximate cause of the injury. [St. Louis-San Francisco R. Co. v. Mills, supra.]

It is our judgment that there is no liability for the acts complained of and that the trial court should have sustained the defendants' demurrer to the plaintiff's evidence. These views obviate the necessity of passing on other assignments of error.

The judgment of the trial court is, therefore, reversed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.