Willard L. Tatham, Appellant, v. Wabash Railroad Company, Appellee.

Gen. No. 45,147.

Opinion filed April 13, 1951. Released for publication May 8, 1951.

JAMES A. DOOLEY, of Chicago, for appellant.

ELMER W. FREYTAG, and KENNETH B. HAWKINS, both of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an action under the Federal Employers' Liability Act. The trial court sustained defendant's motion to strike plaintiff's second amended complaint, plaintiff elected to stand by the pleading, and the trial court entered an order sustaining the motion to strike and entered judgment for defendant with costs. Plaintiff appeals.

The second amended complaint alleges that on December 7, 1945, defendant railroad was engaged in interstate commerce, that plaintiff was employed by it in interstate commerce in the capacity "of gang foreman in the defendant's shop," and that both plaintiff and defendant were subject to the Federal Employers' Liability Act. The complaint further alleges:

"4. The defendant then and there had in its employ a certain co-servant engaged as a pipe fitter helper, who had been employed and maintained by the defendant in said defendant's shop for a long time prior to said occurrence, and said co-servant was and always had been, with the knowledge of the defendant, a vicious, contentious and ill-tempered person, who was quarrelsome and frequently engaged in physical combats, and the defendant had notice that the employment and maintenance of said co-servant in said shop created an unreasonable danger to the plaintiff and other employees of the defendant; and the said co-servant

222

was then and there engaged in putting asbestos lagging on a certain boiler, and thereupon the plaintiff, in the performance of his duties, requested said pipe fitter helper, then and there engaged in performing his duties as a servant of the defendant, to desist in the work then and there being done by him, whereupon said co-servant of the defendant forcibly struck, hit and beat the plaintiff, and thereby the plaintiff was greatly cut, injured and damaged.

"5. The defendant was then and there guilty of one or more of the following acts of negligence which directly caused injury to the plaintiff:

"(a) The defendant, by and through its servant, then and there carelessly and negligently struck, beat and injured the plaintiff.

"(b) The defendant carelessly and negligently employed said pipe fitter helper knowing him to be habitually quarrelsome, contentious and pugnacious.

"(c) The defendant carelessly and negligently failed to guard the plaintiff against assault by its said co-servant, who was known to be vicious, quarrelsome, ill-tempered and pugnacious.

"(d) The defendant carelessly and negligently employed said co-servant from whose conduct there was danger of physical harm.

"(e) The defendant carelessly and negligently created an unreasonable danger to the plaintiff by the employment of a vicious, ill-tempered, quarrelsome and pugnacious co-servant."

The complaint alleges that plaintiff sustained serious and permanent injuries as a direct and proximate consequence of the alleged assault.

Defendant filed a motion to strike the second amended complaint and to dismiss the suit because the said complaint was substantially insufficient in law. The reasons assigned by defendant in support of its motion were "that there was no liability under the

Federal Employers' Liability Act on a railroad employer for the acts of its employees outside the scope of their employment and not in furtherance of their employer's business; that an employer was under no duty to protect an employee from assault by a co-employee acting outside the scope of his employment and not in furtherance of his employer's business; that an employer was not liable for taking and retaining in its employ a person known to be habitually abusive, quarrelsome, contentious, vicious, ill-tempered and pugnacious and from whose conduct there was danger of physical harm, where such danger existed only as the result of, and while such employee was pursuing a course of conduct not within the scope of his employment and not in furtherance of the business of the employer, and that as a matter of law the second amended complaint failed to state a cause of action upon which relief could be granted." Defendant filed a request on plaintiff to admit certain facts (filed under Section 58 of the Civil Practice Act and Rule 18 (2) of the Supreme Court of Illinois). Plaintiff filed an answer to said request in which he admitted certain facts and refused to admit certain others. The admissions that defendant claims are pertinent are: That plaintiff was a supervising gang foreman in a locomotive repair shop at Decatur, Illinois; that he was in charge of repairs on engine 2736 and was in charge of Davis, who was a sheet metal worker assigned to work on the engine; that Davis had been ordered by plaintiff to remove a portion of lagging, which Davis refused to do, and that plaintiff thereupon left the presence of Davis to search for the shop superintendent; that when plaintiff returned to the presence of Davis he found that Davis had ceased lagging the boiler of engine 2736 and was standing on the shop floor at the side of engine 2736; that immediately prior to the attack upon plaintiff Davis had ceased lagging.

Plaintiff contends that the trial court erred in sustaining the motion of defendant to strike the second amended complaint and in dismissing the suit and entering judgment for defendant.

The trial court gave careful consideration to the motion. After hearing oral arguments he caused written briefs to be submitted. Defendant, in support of its motion, submitted the following cases: *Davis v. Green,* 260 U. S. 349; *Atl. Coast Line R. R. v. Southwell,* 275 U. S. 64; *St. Louis-San Francisco R. Co. v. Mills,* 271 U. S. 344; *Sheaf v. Minneapolis, St. P. & S. S. M. R. Co.,* 162 F. (2d) 110. Plaintiff, in opposition to the motion, cited *Lillie v. Thompson,* 332 U. S. 459, and contended that that case overruled the ruling made in *Davis v. Green, supra,* and "governed" the decision of the motion. The trial court, in his opinion, stated that his decision was compelled by the four cases cited by defendant; that "the Supreme Court reconsidered these earlier cases in deciding '*Lillie*', and not only did not expressly overrule but impliedly reaffirmed them, and distinguished the '*Lillie*' case." After a careful examination of the question involved upon this appeal we are satisfied that the order entered by the trial court was warranted under the pleading and the law bearing upon the motion.

The following is "Plaintiff's Theory of the Case":

"The plaintiff's theory of the case is that the *Lillie* case, being the latest enunciation of the United States Supreme Court and being so completely 'on all fours' with this situation, must control, and further that, as we shall hereinafter point out, the cases relied upon by the trial court are readily distinguishable. Plaintiff further contends, as the *Lillie* case demonstrates, that unless the amended complaint were held to state a cause of action, defendant's absolute, positive and non-delegable duty to provide and maintain its employees with a safe place to work would be emasculated.

"More particularly, we demonstrate conclusively that *Davis v. Green,* 260 U. S. 349, which is the only one of the three old cases in which the carrier knew of the fellow servant's vicious propensities, also involved the admitted fact, *absent here,* that the deceased employee also knew of his fellow employee's vicious character, *and turned upon the fact that at the time of the decision of that case, the doctrine of 'assumed risk' was still a part of the Federal Employers' Liability law so far as the dangerous habits of fellow employees were concerned,* there having been evidence and finding in the courts below that the decedent assumed the risks entailed by his co-employee's character. But the doctrine of assumed risk was extirpated from Federal Employers' Liability law by the 1939 amendment thereto (See Title 45 U. S. C. A. 54)."

The following is "Defendant's Theory of the Case":

"Defendant contends that the question involved in this appeal has heretofore been passed upon and decided adversely to plaintiff's contentions by the Supreme Court of the United States, the United States Courts of Appeals, and the courts of last resort of numerous states; and that these decisions have never been overruled and are controlling. The decision in *Lillie v. Thompson,* 332 U. S. 459, 68 S. Ct. 140, 92 L. Ed. 115, dealt with the particular and unique facts involved in that case and has not changed the law applicable to the facts in the case at bar. The trial court's ruling striking the second amended complaint, and when plaintiff elected to stand thereon granting defendant's motion to dismiss the suit and entering judgment for the defendant, was correct and should be affirmed."

The leading case cited by defendant is *Davis v. Green, supra.* The opinion was written by MR. JUSTICE HOLMES and there was no dissent. The case involved an action brought under the Federal Employers' Lia-

bility Act to make the railroad company liable for what is alleged to have been the wilful and wanton killing of Jesse Green, a conductor on the line of the Gulf & Ship Island Railroad Company, by one McLendon, an engineer on the said line. The plaintiff recovered a verdict and judgment, which was sustained by the Supreme Court of Mississippi. The Supreme Court of the United States allowed a certiorari. Mr. Justice Holmes, as usual, wrote a short opinion. The following is the pertinent part of it (pp. 351, 352):

"The ground on which the Railroad Company was held was that it had negligently employed a dangerous man with notice of his characteristics, and that the killing occurred in the course of the engineer's employment. But neither allegations nor proof present the killing as done to further the master's business, or as anything but a wanton and wilful act done to satisfy the temper or spite of the engineer. Whatever may be the law of Mississippi, a railroad company is not liable for such an act under the statutes of the United States. The only sense in which the engineer was acting in the course of his employment was that he had received an order from Green which it was his duty to obey—in other words that he did a wilful act wholly outside the scope of his employment while his employment was going on. We see nothing in the evidence that would justify a verdict unless the doctrine of *respondeat superior* applies."

The foregoing opinion was filed December 4, 1922, and at that time the doctrine of assumed risk applied in Federal Employers' Liability suits, and it was not until 1939 that the law was amended and the said doctrine was eliminated as a defense. The astute counsel for plaintiff seeks to avoid the force of the decision in *Davis v. Green* by arguing that the decision "turned upon the fact that at the time of the decision of that case, the doctrine of 'assumed risk' was still a

227

part of the Federal Employers' Liability law so far as the dangerous habits of fellow employees were concerned.'' The opinion shows, in our judgment, that it was not based upon the doctrine of assumed risk. See, also, the interpretation of the said decision in *Young v. New York Cent. R. Co.,* 88 N. E. (2d) 220, later referred to in this opinion. In *Atl. Coast Line R. R. v. Southwell,* 275 U. S. 64, the opinion, filed October 31, 1927, was also written by MR. JUSTICE HOLMES. The case involved the wilful killing of one of the defendant's employees by another employee and it was charged that the homicide '' 'resulted' from the failure of some superior officer to foresee the danger and to prevent it.'' The Supreme Court approved and followed the law laid down in *Davis v. Green, supra.* There was no dissent.

In *Sheaf v. Minneapolis, St. P. & S. S. M. R. Co.,* 162 F. (2d) 110, the decision was rendered by the U. S. Circuit Court of Appeals, 8th Cir., on June 18, *1947.* The suit was brought by a conductor, under the Act, to recover damages for serious injuries sustained by him as a result of an attack made upon him by the engineer of his train, which had stopped at a small town to take on livestock. The evidence shows that as the conductor was passing by the engine the engineer inquired what the delay was about and the conductor replied that the engineer knew as much about it as he did. The conductor then turned to go back toward the depot and as he did so he heard the engineer say something which he did not understand because he was hard of hearing, and he asked the engineer to get out of his cab so that he could talk to him. The engineer then swore at Sheaf, alighted from the cab, grabbed Sheaf, threw him to the ground, and caused serious injuries. The complaint alleged that the assault was made without provocation and that the engineer had been known to the railroad company for many years prior to the assault to have

been a quarrelsome and vicious person. The complaint also alleged that the assault was made while the engineer was acting within the scope of his employment, that the railroad had ratified the engineer's act by retaining him in its service, and that his employment under the circumstances constituted negligence. The trial court sustained the defendant's motion to dismiss the action on the ground that the complaint failed to state a claim upon which relief could be granted. Upon appeal the Court of Appeals affirmed the trial court, and in its opinion stated (pp. 113, 114):

". . . Under the Employers' Liability Act 'Liability arises from negligence not from injury. . . . And that negligence must be the cause of the injury.' [Citing cases.] . . .

"Where, as in this case, an employee of a railroad company is injured by an unprovoked assault of a fellow servant, even though such an assault may be considered negligence rather than a trespass, the employer is not liable unless the aggressor was at the time of the assault acting within the scope of his employment. [Here follows excerpts from *Davis v. Green, supra.*]

"So in the instant case the unprovoked attack of Johnson upon the plaintiff occurred while they were both employed by the defendant railroad company, but the attack was in no way intended to further the business of the company and was not within the scope of Johnson's employment. The decision of the Supreme Court in the case of *Atlantic Coast Line R. R. Company v. Southwell*, 275 U. S. 64, 48 S. Ct. 25, 72 L. Ed. 157, applies the same principle to similar facts; and neither of these cases has since been expressly overruled by the Supreme Court." (See, also, *Hoyt v. Thompson*, 174 F. (2d) 284, and *Smith v. Lehigh Valley R. Co.*, 174 F. (2d) 592, which follow the ruling in *Davis v. Green, supra.*)

In *Osment v. Pitcairn,* 349 Mo. 137, 159 S. W. (2d) 666, involving an action under the Act, it was alleged that while the plaintiff was a member of an interstate switching crew and standing in a freight house of the defendant during his employment, a messenger boy, one Stalac, attacked him and fractured his skull; that Stalac was an incompetent, habitually careless, improper and dangerous person to have and retain in the railroad's employ and that the railroad knew of his improper and dangerous propensities. The defendant appealed from a judgment entered in favor of the plaintiff. The opinion states (p. 141) : "The Supreme Court of the United States, up to the present at least, has refused to impose liability on employers for acts of employees when outside the scope of their employment and not in furtherance of their employer's business." The opinion then held that the controlling decision upon the subject was *Davis v. Green,* and after quoting from the opinion in that case states (p. 142) :

"Under the federal act, therefore, the master is not liable unless the assault or other conduct complained of was committed by the wrongdoer within the scope of his employment—in furtherance of his master's business—or, unless the act was directed or authorized. [*Bocian v. Union Pac. R. Co.,* 137 Neb. 318, 289 N. W. 372; *Jackson v. Chicago, R. I. & P. Ry. Co.,* 178 Fed. 432; *Roebuck v. Atchison, T. & S. F. R. Co.,* 99 Kan. 544, 162 Pac. 1153, L. R. A. 1917 E, p. 741; *Griffin v. Baltimore & O. R. Co.* (W. Va.), 126 S. E. 571.]"

Plaintiff relies upon the case of *Lillie v. Thompson,* 332 U. S. 459, and argues that that case not only supports and controls the instant case but that the facts in the instant case are far more favorable to plaintiff than were the facts in the *Lillie* case favorable to the plaintiff in that case. *Lillie v. Thompson* was interpreted by the Court of Appeals of Ohio in a late case, *Young v. New York Cent. R. Co., supra,* 88

230

N. E. (2d) 220 (1949). There the plaintiff brought suit under the Act for damages for personal injuries sustained by him as the result of an alleged unprovoked attack by a fellow worker known to the railroad to be dangerous and vicious. The opinion in that case states (p. 221):

"The gravamen of plaintiff's complaint is that the defendant was negligent in retaining in its employ a dangerous and vicious man with knowledge of these propensities and characteristics and in failing to provide plaintiff with a safe place to work."

It appears that the plaintiff in that case had been employed by the railroad for thirty-one years as a towerman or signalman and was assigned to a tower at a railroad crossing. His working hours were from 11 p. m. until 7 a. m., and he performed his duties in a small shanty. Prior to the night of November 29, 1943, when the attack was made, the plaintiff had only a casual acquaintance with Johnson, who committed the attack, although plaintiff was in the habit of relieving Johnson, also a signalman working in the same shanty. On the night in question the plaintiff was delayed in relieving Johnson and when he arrived Johnson became angry, struck the plaintiff and stabbed him in the chest and abdomen. Johnson had previously attacked other employees, on seven or eight occasions, and reports of the attacks had been made to the railroad. The opinion states (p. 223):

"Cases involving circumstances similar to those of the instant case have heretofore been considered and decided by the Federal Courts and the interpretation placed upon the Federal Employers' Liability Act by such decisions must be followed by this court in the instant case insofar as they are applicable."

The opinion, after citing, with approval, excerpts from the opinion in *Davis v. Green*, states that *Atlantic Coast Line Railroad v. Southwell, St. Louis-San Fran-*

*cisco Railroad Co. v. Mills,* and other cases, followed the reasoning in *Davis v. Green.* The opinion then states (p. 223):

"Counsel for plaintiff apparently recognizing the force of the foregoing decisions argue that these cases were decided prior to 1939 at which time the Federal Employers' Liability Act was amended in such a manner as to abolish the defense of voluntary assumption of risk and that therefore these cases have no application to facts such as are disclosed by the record in the instant case.

"In our opinion, this contention cannot be sustained because in the cases cited the Supreme Court did not predicate its decisions on the defense of assumption of risk. The gist of these decisions is generally to the effect that the railroad company is not liable unless the attack or act complained of was done to further the railroad company's business even though the act may have occurred in the course of the actor's employment.

"In our opinion, the attack made upon the plaintiff in the instant case could not be considered as an act in furtherance of the employer's business on the most liberal interpretation in favor of the plaintiff. On the contrary, the facts in the present case show a wanton, malicious, unprovoked attack done 'to satisfy the temper or spite' of the fellow employee."

The opinion further states (pp. 223, 224):

"Plaintiff places great reliance upon the recent case of *Lillie v. Thompson, Tr.,* 332 U. S. 459, 68 S. Ct. 140, 141, 92 L. Ed. 73. In that case a per curiam opinion of the Supreme Court reversed the District Court and the Circuit Court of Appeals, 6 Cir., 162 F. (2d) 716, which had affirmed the decision of the District Court, dismissing the petition of plaintiff for failure to state a cause of action. The court said in part:

" 'Petitioner's allegations may be summarized as follows: Respondent required her, a 22 year old telegraph operator, to work alone between 11:30 p. m. and 7:30 a. m. in a one-room frame building situated in an isolated part of respondent's railroad yards in Memphis. Though respondent had reason to know the yards were frequented by dangerous characters, he failed to exercise reasonable care to light the building and its surroundings or to guard or patrol it in any way. Petitioner's duties were to receive and deliver messages to men operating trains in the yard. In order for the trainmen to get the messages it was necessary for them to come to the building at irregular intervals throughout the night, and it was petitioner's duty to admit them when they knocked. Because there were no windows in the building's single door or on the side of the building in which the door was located, petitioner could identify persons seeking entrance only by unlocking and opening the door. About 1:30 a. m. on the night of her injury petitioner responded to a knock, thinking that some of respondent's trainmen were seeking admission. She opened the door, and before she could close it a man entered and beat her with a large piece of iron, seriously and permanently injuring her.

" 'In support of his motion for summary judgment respondent alleged and petitioner did not deny, that the assailant was not an employee of the respondent and that the attack was criminal. . . . We are of the opinion that the allegations in the complaint, if supported by evidence, will warrant submission to a jury. Petitioner alleged in effect that respondent was aware of conditions which created a likelihood that a young woman performing the duties required of petitioner would suffer just such an injury as was in fact inflicted upon her. That the foreseeable danger

233

was from intention or criminal misconduct is irrelevant; respondent nonetheless had a duty to make reasonable provision against it. Breach of that duty would be negligence, and we cannot say as a matter of law that petitioner's injury did not result at least in part from such negligence.' "

The opinion further states (pp. 224, 225):

"It is obvious, we think, that there is no analogy between the facts of *Lillie v. Thompson*, and the present case. But is there analogy in principle? We think not.

" . . .

"We think that the emphasis in the *Lillie* case is placed, first, upon the fact that plaintiff was a young girl 22 years of age who was criminally attacked under conditions which created a peculiar hazard for a female employee, and second, the fact of the physical condition and location of the building in which she was obliged to work, and third, the fact that her working hours were required to be between 11:30 P. M. and 7:30 A. M., and fourth, *in a place which was infested by 'thieves, tramps, hoboes, and other trespassers.'* The gist of the decision of the Supreme Court and later the Circuit Court of Appeals on the second appeal, is that by the exercise of reasonable prudence, Thompson, the trustee of the railroad company, should have known the dangers inherent in such a peculiar situation.

"The doctrine of the *Lillie* case must, we think, have limited application to cases of a similar factual nature. We cannot agree with the contention of plaintiff that on principle the same issues are involved in that case as in the instant case.

"We are further of the opinion that the decision of the Supreme Court in the *Lillie* case has not repudiated, either expressly or impliedly, the doctrine of *Davis v. Green.* . . ." (Italics ours.) (*The U. S.*

234

*Supreme Court* (339 U. S. 986) *denied certiorari in Young v. New York Cent. R. Co.)*

It will be noted that the Court of Appeals of Ohio in the foregoing opinion *interpreted the opinion in Davis v. Green and also the opinion in Lillie v. Thompson.* We find ourselves in full accord with both interpretations. The decision was an important one and it is a reasonable assumption that if the Supreme Court of the United States did not approve the interpretations made by the Ohio court it would not have denied a certiorari in that case. It must also be noted that the Court of Appeals in the *Young* case passed upon the points raised by the plaintiff in the case at bar, and adversely to plaintiff's contentions. The attention of the Supreme Court in the *Lillie* case was called to *Davis v. Green, supra,* and *Atlantic Coast Line R. Co. v. Southwell, supra,* and it is clear from the opinion of the court that it did not overrule the law laid down in these cases. Had the Supreme Court intended to overrule or modify the important law first laid down in *Davis v. Green,* the court would certainly have plainly indicated such intention. The court stated that the cases cited by the District Court (*Davis v. Green, St. Louis-San Francisco Railroad Co. v. Mills; Atlantic Coast Line R. v. Southwell, supra,* and *Atlanta & Charlotte Air Line R. Co. v. Green,* 279 U. S. 821) "do not cover the fact situation set forth by the pleadings in this [*Lillie*] case." As we view the *Lillie* case the facts there presented made out a perfect case of a defendant ordering a young girl to a dangerous place of work which the Trustee, defendant, knew or by the exercise of reasonable care should have known to be unsafe and without taking reasonable care for her protection. It is a *sui generis* case. In the instant case there was nothing unsafe about the place itself where the assault was made. The conduct of the defendant in the *Lillie* case was so grossly negli-

235

gent that it approached criminal negligence and the defense interposed was so devoid of merit that it is difficult to understand why the defendant attempted to defend the action *upon the merits*. We agree with the statement in *Young v. New York Cent. R. Co., supra* (p. 225), that "the doctrine of the *Lillie* case must, we think, have limited application to cases of a similar factual nature."

■■ At the conclusion of his *reply* brief plaintiff contends that "the complaint avers and the motion admits that the employee in the instant case was acting within the scope of his employment." This contention is raised for the first time in the reply brief and under our rule we would be justified in disregarding it. However, there is no merit in it. The argument in support of the contention is very brief and it is, as we understand it, that if the law laid down in *Davis v. Green* is to be followed "the complaint avers that the servant was acting within the scope of his employment. This averment alone entitles the plaintiff to a trial by jury." We assume from this statement of plaintiff that he contends that the complaint avers that the assailant of plaintiff was acting within the scope of his employment when he "forcibly struck, hit and beat the plaintiff." It is sufficient to say in answer to the instant contention that while the second amended complaint alleges that plaintiff was engaged in performing his duties as a servant of defendant when he requested the assailant to desist in the work then and there being done by him, the complaint does not allege that the co-servant of defendant when he struck, hit and beat plaintiff "was acting within the scope of his employment," nor does it allege that the said co-servant when he committed the assault was acting in furtherance of defendant's business. The theory of plaintiff's claim, as pleaded, is, that the co-servant who assailed plaintiff "was and always had been, with

the knowledge of the defendant, a vicious, contentious and ill-tempered person, who was quarrelsome and frequently engaged in physical combats, and the defendant had notice that the employment and maintenance of said co-servant in said shop created an unreasonable danger to the plaintiff and other employees of the defendant; and the said co-servant was then and there engaged in putting asbestos lagging on a certain boiler, and thereupon the plaintiff, in the performance of his duties, requested said pipe fitter helper, then and there engaged in performing his duties as a servant of the defendant, to desist in the work then and there being done by him, whereupon said co-servant of the defendant forcibly struck, hit and beat the plaintiff. . . ." Tested by the allegations of the complaint the assault upon plaintiff was a wilful and wanton act committed by a vicious and dangerous man, because plaintiff, "the gang foreman", requested him to desist in the work that he was doing. Upon a request made by defendant on plaintiff to admit facts plaintiff admitted that at the time of the assault the assailant had ceased lagging (the work that he had been doing) and was standing on the shop floor next to an engine. The present contention of plaintiff is, in our judgment, an admission that he no longer feels confident that *Davis v. Green* was overruled by *Lillie v. Thompson* and that the latter case controls the instant action.

We are satisfied that the judgment order of the Superior Court of Cook county should be affirmed and it is accordingly so ordered.

*Judgment affirmed.*

SCHWARTZ, P. J. and FRIEND, J., concur.