ANNE M. NEWMARK *et al.*, Plaintiffs-Appellants, *v.* WILLIAM HART-MAN *et al.*, Defendants-Appellees.

Fourth District   No. 17611

Opinion filed September 30, 1982.—Rehearing denied October 28, 1982.

Balbach & Fehr, of Urbana, for appellants.

Moore, Nelson & Stipp, of Hoopeston (William E. Nelson, of counsel), for appellees.

JUSTICE LONDRIGAN delivered the opinion of the court:

On August 29, 1977, Anne M. Newmark fell while she was retrieving three suits left at her front door by defendant William Hartman, an employee of Garber's Modern Cleaners of Champaign, which defendant Joseph Hamburg partly or wholly owns. The trial court granted the defendants' motion for summary judgment, ruling that their acts had not proximately caused the plaintiffs' injuries.

The plaintiffs' amended complaint, filed October 28, 1981, comprises two counts: the first is brought by Anne Newmark in her own behalf and seeks damages for her personal injuries; the second count is brought by Anne Newmark and the First National Bank in Champaign as executors of the estate of Mrs. Newmark's husband, Nathan, who died January 25, 1981, and seeks damages for his loss of consortium occasioned by his wife's injuries. According to the amended complaint, at 6:30 p.m. on the day of the accident Hartman left clothing "on the closing mechanism at or near the top of the front screen door" of the Newmarks' home; directly after Hartman left, Mrs. Newmark tried to retrieve the clothing by standing on a kitchen stool but fell.

The amended complaint alleges that Hartman committed four negligent acts: (1) he left the clothing outside the home "without au-

thorization and in an unreasonably dangerous condition and in an unreasonably dangerous location for a person of" Mrs. Newmark's size; (2) he left the clothing "in the screen door closing mechanism," which was too high for Mrs. Newmark to reach, "thereby creating an unreasonably dangerous condition for a person of" Mrs. Newmark's size, which Hartman knew or should have known; (3) he left the clothing on the mechanism, where it "would be difficult to remove because the hangers could become lodged in the mechanism, or caught between the door frame and the mechanism, or require unusual force for their removal, thereby creating an unreasonably dangerous condition for a person of" Mrs. Newmark's size, which Hartman knew or should have known; and (4) he left the clothing "in a place where the defendants could reasonably foresee that the plaintiff, Anne M. Newmark, might injure herself in retrieving" it.

The amended complaint also alleges that the Newmarks had never authorized Hartman or anyone else to leave clothing at the front door or anywhere else outside the home, that on each of the previous times Hartman delivered cleaning to the Newmarks he had given it to Mr. or Mrs. Newmark at the door or inside their home, and that Hartman and Hamburg knew that Mrs. Newmark was short and had trouble moving.

The defendants' motion for summary judgment argues that Mrs. Newmark's fall was "proximately caused by her intervening actions" rather than by the defendants' acts, that the defendants owed Mrs. Newmark no duty of care, and that the accident was unforeseeable. The motion quotes several passages from Mrs. Newmark's discovery deposition, taken November 7, 1980, when she explained that a stroke in May 1974 had left her with "a slight limp" in her left leg and "a slight weakness" in her left arm; she used a cane to walk. According to the quoted excerpt she agreed with defense counsel that "there was no real urgency about this cleaning." After Hartman left the cleaning and drove off, Mrs. Newmark decided to bring the clothing, three expensive suits, inside. She got a stepstool—she had not used one for a year—hooked the screen door so that she would not fall through it, and stepped up on the stool, supporting herself on the window molding. The three items were tied together and were heavy and knocked her off; she had not anticipated this. Mrs. Newmark did not seek anyone's help in retrieving the clothing.

In answer to the motion the plaintiffs submitted an affidavit by Mrs. Newmark and excerpts from Mrs. Newmark's and Hartman's depositions. In her affidavit Mrs. Newmark asserts that on August 29, 1977, she was in good health, excepting the effects of the stroke,

which Hartman knew about, and that Hartman had delivered cleaning to her home "possibly as many as 12" times in the year preceding that day. Mrs. Newmark also asserts that she never gave Hartman permission to leave clothing outside the door and that Hartman had never previously done that. That day Hartman hung the clothing on the device that closes the door, about seven feet above the floor. According to Mrs. Newmark's deposition—the same one used by the defendants—she was born August 28, 1910, and is five feet tall. Besides the stroke she also suffered from angina but never needed to take medicine for that. Hartman, who always delivered the clothing by three in the afternoon, knocked at the Newmarks' door about 7 p.m. the night of the fall. Mrs. Newmark was the only person home, and she got her cane and went to answer the door, which took her about a minute or two; when she got there she saw Hartman in his truck "backing out the driveway just ferociously." Mrs. Newmark shouted and flashed the porch light several times but Hartman did not stop. She had never given Garber's or Hartman permission to leave clothing at her home when no one was there.

The plaintiffs also excerpted Hartman's deposition. Hartman was 49 years old and had worked at Garber's for 21 years, where he was paid by commission. He will not leave clothes at a home unless the customers tell him in advance that it is all right to do that; without this permission he will return the clothing to Garber's. Hartman explained that when the Newmarks were home he would enter the house and hang the cleaning inside a closet or drape it over a chair. He also said that for the delivery in question here Mrs. Newmark had told him that she needed the clothing quickly and that on this one occasion he was to leave it at the door, unattended, if no one answered. Hartman remembered only that Mrs. Newmark was thin and walked with a cane. On the day of the fall Hartman hung the clothing—the hangers were tied together—on the device that closes the storm door; the device was at the top of the door in the corner. He did not see or hear Mrs. Newmark, who always answered the door promptly.

The trial court granted the defendants' motion, finding as a matter of law that the defendants had not proximately caused the harm. We affirm the trial court's decision, though on the basis that there was no breach of duty.

■■ The concept of proximate or legal cause may be expressed in terms of duty. (Prosser, Torts sec. 42 (4th ed. 1971).) The advantage gained by translation is that duty, unlike proximate cause, focuses attention on the nature and limits of the defendant's obligation rather than on chains of events, which beg to be confused with actual cause.

Rephrased in terms of duty, then, the question becomes whether the defendants were obligated to protect Mrs. Newmark from falling.

■ The defendants' duty here was not broad enough to include the accident that occurred; stated another way, the defendants did not breach their duty to use ordinary care for the safety of the plaintiff. In *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233, the court said:

"After the event, hindsight makes every occurrence foreseeable, but whether the law imposes a duty does not depend upon foreseeability alone. The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant, must also be taken into account."

Measured against this formula, the circumstances here did not give rise to a duty to protect Mrs. Newmark from what occurred. The defendants were obligated to prevent only foreseeable accidents; the more likely risk was to the clothing, for it could have been damaged by rain or stolen. What actually occurred was unlikely.

■ Furthermore, a party's duty is limited to guarding against risks that are unreasonable (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376, 308 N.E.2d 617, 619; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535, 538); any risk to Mrs. Newmark's safety posed by Hartman's leaving the clothing at the door was reasonable. The defendants therefore did not breach their duty. Although the parties disagree whether Mrs. Newmark instructed Hartman to leave this particular batch of clothing at the door in the event no one seemed to be home, the intended manner of delivery has no bearing on the scope of the defendants' duty. Hartman's employer established the rule against leaving clothing unattended without the customer's permission, and the plaintiffs do not allege that the rule is intended to protect customers from falls (see *Mick v. Kroger Co.* (1967), 37 Ill. 2d 148, 224 N.E.2d 859). Summary judgment on this question would have been appropriate under the record here. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) We therefore conclude that the defendants did not breach their duty to use ordinary care for the safety of Mrs. Newmark and affirm the decision of the trial court.

Affirmed.

GREEN, P. J., and WEBBER, J., concur.