PATRICIA WIDLOWSKI, Plaintiff-Appellant, v. DURKEE FOODS, Division of SCM Corporation, Defendant-Appellee (Larry Wells, Defendant).

First District (3rd Division)   No. 1—86—2321

Opinion filed November 1, 1989.

McNAMARA, J., dissenting.

Leahy & Donovan, of Chicago (Tom Leahy and Stephen Phalen, of counsel), for appellant.

Thomas J. Fleischmann, Terence E. Flynn, and Kimberley Marsh, all of Gessler, Flynn, Laswell, Fleischmann, Hughes & Socol, Ltd., of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Patricia Widlowski, brought this action to recover damages for personal injuries she received as a result of the alleged negligence of defendant Durkee Foods (Durkee) and its employee, defendant Larry Wells (Wells). The trial court granted Durkee's section 2—615 motion to dismiss counts I and II of the complaint on the basis that the complaint is insufficient in law to state a cause of action. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) Plaintiff appeals. We reverse and remand.

On December 3, 1983, Durkee, a manufacturer of spice products, operated a food processing plant in Elmwood, Illinois. Wells, a Durkee employee, entered one of Durkee's industrial tanks for the purpose of cleaning the tank. While he was in the process of cleaning the tank, Wells was overcome by nitrogen gas in the tank. Due to oxygen deprivation, Wells became delirious, reflexive and incoherent. He was taken to a hospital where he was attended by plaintiff, a nurse. While in a state of delirium, Wells bit off a portion of plaintiff's right middle finger while she was attending him as a nurse.

When read together, counts I and II of the complaint allege that Durkee was negligent on the basis of *respondeat superior* and because it (1) allowed Wells to enter the tank when it knew or should have known that it was filled with nitrogen; (2) failed to equip Wells with proper protective gear before sending him into the tank; and (3) failed to advise Wells that cleaning the tank without protective gear would result in his being deprived of oxygen and become a danger to persons near him, when Durkee knew or should have known of the alleged facts.

The trial court dismissed the complaint as to Durkee on the basis that it was insufficient as a matter of law to allege a duty to the plaintiff. To support the ruling, Durkee argues that the complaint fails to establish the existence of any duty owed by Durkee to the plaintiff because public policy does not and should not require an employer to control the actions of a delirious employee being treated at a hospital. However, the ability or inability of Durkee to control Wells' actions at the hospital is not the focal point of the duty owed by Wells or Durkee.

When Wells was at the hospital, Wells and Durkee had already breached a duty of ordinary care to anyone who within reasonable foreseeability might be injured as a result of the failure to take proper precautions in the manner in which the industrial tank was being cleaned.

We therefore focus our attention on whether it was reasonably foreseeable that plaintiff might be injured if Wells and Durkee breached a duty of ordinary care in the manner in which the tank was being cleaned. If it was reasonably foreseeable, then Wells and Durkee owed plaintiff a duty of ordinary care to take proper precautions before cleaning the tank.

The salient facts are clearly set forth in the complaint. Durkee was using nitrogen gas in its food processing business. One of its food processing tanks required cleaning. When its employee, Wells, entered the tank to clean it, the tank "was filled with nitrogen gas, among other substances, and lacked a sufficient amount of oxygen to sustain an individual during the cleaning process." Also, "Wells, while inside the above-mentioned industrial tank, was overcome by nitrogen gas and as a result, became ill and was in an oxygen deprived state of health." As a result of the nitrogen gas and deprivation of oxygen, Wells became delirious, "agitated, reflective [*sic*] and incoherent," and bit off a portion of plaintiff's finger while she was giving him medical attention at a hospital where he had been taken for his condition.

■■ ■ We believe that, under the alleged facts, it was reasonably foreseeable that if Wells and Durkee breached a duty of ordinary care in the manner in which the tank was being cleaned, Wells would be overcome by inhaling the nitrogen gas and a deprivation of oxygen. We also believe that it was reasonably foreseeable that Wells would thereby become delirious, agitated, reflexive and incoherent, and a danger to himself and others with whom he made direct contact. In determining whether an injury was reasonably foreseeable to warrant a duty to the injured party, it is not essential that the defendant should have foreseen the precise hazard or exact consequences and injury resulting from the defendant's action or inaction. *Dillon v. United States Steel Corp.* (1987), 159 Ill. App. 3d 186, 198, 511 N.E.2d 1349, 1357.

In addition, the fact that the direct contact between Wells and the plaintiff was made at the hospital rather than Durkee's plant is immaterial to determine whether the injury was reasonably foreseeable. We therefore conclude that the injury to the plaintiff was reasonably foreseeable and that Durkee and Wells owed plaintiff a duty of ordinary care to take proper precautions to clean the tank.

■■ Durkee also contends that "the complaint fails to state a cause

of action sounding in negligence, and was properly dismissed." To support its contention, Durkee states that "Wells bit plaintiff's finger while in an unconscious and agitated state," and that, therefore, the "standard of conduct which applies to Wells is that of a reasonable man who is in an unconscious, agitated state." Durkee concludes that "Well's conduct was in keeping with that of a reasonable man operating under a like disability." However, it is plain that whether Wells was negligent is measured by his conduct in entering the tank without adequate equipment. It follows that there is no merit to Durkee's contention. The complaint states a cause of action sounding in negligence.

■■ Durkee next contends that "a principal cannot be held liable for the actions committed by an agent who was delirious" and "thus no duty arose." Durkee's contention misconceives the nature of the case. This case is based on whether Durkee and Wells were negligent in the manner in which Wells entered the tank and the manner in which the tank was being cleaned. These acts were committed, and the duty arose, before Wells became delirious. The act that Wells committed while in a delirium was not the negligence or breach of duty but rather the result of the negligence and breach of duty that had already been committed. Durkee's contention is without merit.

Accordingly, the order dismissing counts I and II of the complaint as to Durkee is reversed. The case is remanded for further proceedings in the trial court.

Reversed and remanded.

FREEMAN, P.J., concurs.

JUSTICE McNAMARA,* dissenting:

I dissent from the majority holding, which reverses the trial court order dismissing plaintiff's complaint. I would find that defendant owed no duty to plaintiff and that the complaint was properly dismissed.

A motion to dismiss a complaint under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) may be granted where it clearly appears that no set of facts could be proved which would entitle plaintiff to recover. (*Mohrdieck v. Village of Morton Grove* (1981), 94 Ill. App. 3d 1021, 419 N.E.2d 517.) Failure to allege facts from which the law will raise a duty justifies dismissal of a

---

*Justice McNamara participated in this opinion prior to his assignment to the sixth division.

complaint. *Anderson v. Davis Development Corp.* (1968), 99 Ill. App. 2d 55, 241 N.E.2d 222.

The existence of a duty in a common law negligence action is a matter of law to be determined by the court. (*Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 484 N.E.2d 1088; *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.) The complaint before us adequately alleges the breach of a duty which defendant owed to its employee, but the complaint fails to sufficiently allege the breach of a duty defendant owed to plaintiff.

The imposition of a duty is an exercise of judicial policy making. (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250.) The majority ignores the well-established principle that in determining whether the law imposes a duty, foreseeability of possible harm must be considered along with the magnitude of the risk involved in defendant's conduct; the burden of requiring defendant to guard against that risk; and the consequence of placing the burden upon defendant. (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250.) In this case, all of the factors relevant to a court's determination of whether a duty exists support a finding that defendant owed no duty to plaintiff as a matter of law.

Foreseeability is a factor in both the court's duty determination and the jury's proximate cause determination. (*Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 465 N.E.2d 513; *Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 398 N.E.2d 1007.) Foreseeability is not solely a matter to be determined by a jury. (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250; *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) Duty, unlike proximate cause, focuses on the nature and limits of defendant's obligation rather than on a chain of events. (*Newmark v. Hartman* (1982), 109 Ill. App. 3d 379, 440 N.E.2d 1059.) A court can properly dismiss a negligence cause of action where it finds no duty exists because of the absence of reasonable foreseeability, *e.g.*, where the injury results from a freakish, bizarre or fantastic occurrence. See. *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.

In almost any factual setting, the likelihood of a nurse's finger being bitten off by a patient is extremely slim. Research has failed to reveal any similar cases. Considering factors such as the wide spectrum of conditions patients are in when they arrive at a hospital emergency room, the professional training and broad experience of medical personnel in handling patients who are possibly in extreme pain, in shock, terrified, comatose, experiencing convulsions, or otherwise seri-

ously disabled, and the number of times a nurse will have her hand in a patient's mouth, there is clearly little chance of this type of injury occurring.

In addition, the imposition of a burden on defendant to reduce the risk of bite wounds suffered by medical personnel treating employees for work-related injuries would be an onerous, and a severely impractical or even impossible, burden on defendant. Defendant would be transformed into an insurer for even the remotest injuries caused by its employees. Defendant conceivably would be required to possess the amount of medical knowledge sufficient to warn medical personnel treating an employee suffering from oxygen deprivation of the danger they might face in placing their fingers near the injured employee's teeth. To mandate that employers possess such highly specialized medical knowledge is impractical; to require nurses and doctors to defer to the medical knowledge and related warnings of a patient's employer who manufactures spices and seasonings is absurd.

I do not believe it is desirable to extend the liability of a negligent employer to an injury so unrelated in time, place and circumstance to the negligent conduct. The limits of liability must be balanced against the societal interests involved in order to ascertain how far defendant's duty may justly be extended. See *Phipps v. McCabe* (N.H. 1976), 362 A.2d 186, 187 (defendant's duty cannot be extended to plaintiff infant where defendant's car struck the infant's mother, and several days later, dizzy from the accident injuries, the mother dropped the infant), citing W. Prosser, Torts, §43, at 257 (4th ed. 1971).

The majority improperly focuses on defendant's burden of avoiding the negligence which originally caused Wells to become ill. Plaintiff reasons that there would be no increase in defendant's burden because defendant already owes its employees the duty to take proper safety precautions when working with nitrogen. This reasoning erroneously focuses on the magnitude of defendant's burden in reducing the risk of the injury which Wells suffered, instead of the risk of the injury which plaintiff suffered. The majority leaps beyond the employer's reasonable standard of care and extends defendant's duty far beyond activities which defendant has any control over, or could reasonably foresee.

The majority's scant reasoning fails to support its holding. The majority defines an enormous spectrum of foreseeability. At one end is the well-recognized principle that defendant need not have foreseen the precise hazard or exact consequence. At the spectrum's other end, where the majority places this case, is the newly announced, without any citation to law, notion of foreseeability that a delirious employee would be a danger to anyone "with whom he made direct contact."

(190 Ill. App. 3d at 383.) The law establishing duty has never been defined in such broad, open-ended terms. It would drastically alter the law of negligence to extend a negligent tortfeasor's duty at all times and even under the most bizarre circumstances to "anyone with whom the victim made contact."

Additionally, the preventive measures plaintiff urges us to impose on defendant would have far-reaching economic and social impacts. Plaintiff argues that it would be a wise policy decision to promote the safe use of hazardous industrial gases. However, the economic and social impact would go far beyond the impact which plaintiff portrays. Under such a rule, employers could be held liable for even the most bizarre occurrences which have only a fragile and tenuous relation to the employer's negligent conduct. For example, an employer might have a duty to prevent other injuries to medical personnel treating an employee who was injured due to the employer's negligence, such as preventing a nurse from slipping and falling when she steps in blood which dripped from an employee's lacerations. Or, an employer might be required to prevent a physical therapist from tripping over an employee's crutches which the employee used after breaking his leg at work. I would not be willing to impose such a burden on an employer, notwithstanding the employer's initial negligence which resulted in the employee's injury.

I would find that the likelihood of a treating nurse having her finger bitten off by a patient who was overcome by nitrogen fumes while working is too slim; the magnitude of the risk involved in defendant's conduct is too small; and the consequences of placing the duty upon employers are too far-reaching to justify the imposition of a duty on the employer to protect medical personnel from the type of injury caused here by the patient-employee. For these reasons, I would hold that defendant had no duty to plaintiff under the circumstances presented here.

Having found that defendant owed no legal duty to plaintiff as a matter of law, I would not reach the issue of proximate cause. A cause of action for negligence cannot be established where no legal duty exists. *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.

In regard to the theory of *respondeat superior*, the majority, again without citation, merely asserts that the biting itself was not negligent, but rather was "the result of the negligence and breach of duty that had already been committed." (190 Ill. App. 3d at 384.) I disagree.

An employer is liable for an employee's torts committed within the

scope of employment. (*Wilson v. Clark Oil & Refining Corp.* (1985), 134 Ill. App. 3d 1084, 481 N.E.2d 840.) Biting the nurse in the emergency room was not even remotely within the scope of his employment. Moreover, an employer must have some reason to believe that the act which injured plaintiff would be done by the employee. (*Wilson v. Clark Oil & Refining Corp.* (1985), 134 Ill. App. 3d 1084, 481 N.E.2d 840.) I cannot see how defendant could have foreseen that its employee would bite off a nurse's finger.

Finally, an employer has no duty to control the conduct of an employee unless the employer knows such control is necessary and has the opportunity to exercise such control. (*Wilson v. Clark Oil & Refining Corp.* (1985), 134 Ill. App. 3d 1084, 481 N.E.2d 840.) Defendant had no reason to believe it was necessary for it to control Wells' conduct once he was under professional medical care at the hospital. Moreover, even if the hospital gave the employer the opportunity to exercise such control, it would seriously interfere with the hospital's ability to provide the necessary medical treatment for its patient.

I would conclude that the trial court properly dismissed the complaint for failure to state a cause of action. As a matter of law, no set of facts would be proved which would entitle plaintiff to recover in this case. Defendant owed no duty which would provide a basis for relief to plaintiff.