Mike and Madalyn **BERGA, Appellants,**

v.

**ARCHWAY KITCHEN AND BATH, INC., Respondent.**

No. 68584.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 18, 1996.

Motion for Transfer to
Supreme Court Denied Aug. 1, 1996.

James E. Hullverson, Jr., Hullverson Law Firm, St. Louis, for appellant.

Eugene K. Buckley, Evans & Dixon, St. Louis, for respondent.

SIMON, Judge.

Mike and Madalyn Berga, plaintiffs, appeal the granting of a motion to dismiss for failure to state a claim in favor of Archway Kitchen and Bath, Inc. (Archway), in an action for the wrongful death of their son, Mark, pursuant to § 537.080 RSMo. Supp.1992 (all further references shall be to RSMo. Supp.1992 unless otherwise noted).

Plaintiffs contend the trial court erred in granting Archway's motion to dismiss because: (1) Archway had a legal duty to the general public to use reasonable care to avoid

creating an unreasonable risk of harm by discharging from work employees who were overexposed to toxic fumes throughout the day at work, and who therefore were at risk for incapacitating illness endangering themselves and others; and (2) a factual dispute exists as to whether Archway satisfied or breached that legal duty. We affirm.

Mark Berga died as a result of injuries sustained when Chris Dowling lost consciousness while driving, and his vehicle crossed the median of a divided highway and struck Mark's vehicle head-on. Dowling was returning home after working throughout the day at Archway. Plaintiffs brought an action in the Circuit Court of the City of St. Louis against Dowling; Archway, his employer; and an unknown chemical manufacturing company, an Archway supplier.

In response to the petition, Archway filed a motion to dismiss or for summary judgment. It also filed a motion to transfer the case to St. Louis County, Missouri, which was granted. Plaintiffs filed an amended three count petition alleging that: 1) Dowling was negligent in operating his vehicle (Count I); 2) Archway was negligent, based alternatively on vicarious liability, negligence, and negligence *per se* (Count II); and 3) the manufacturer of the chemicals involved was negligent in designing and manufacturing the chemicals that Dowling worked with (Count III). Count I was settled by plaintiffs and Dowling, and service of process was not obtained on the manufacturer in Count III.

Responding to Count II, Archway filed a motion to dismiss the amended petition or for summary judgment supported by a memorandum. As to the vicarious liability allegation, Archway claimed there was no genuine issue of material fact as to whether Dowling was working in the course and scope of employment. Archway attached Dowling's timesheet and an affidavit from Dowling's superior stating Dowling had clocked out twenty-four minutes before the accident took place and was not on duty or engaged in the performance of any duties for Archway at the time of the accident. As to the negligence allegation, Archway claimed that the petition failed to state a claim upon which relief can be granted, in that Archway owes no duty to members of the public with respect to the working conditions at the plant and its duties run only to its employees, and its employees' exclusive remedy for violation of such duties is under the Workers' Compensation Act. The trial court granted Archway's motion.

At oral argument on Archway's motion, plaintiffs conceded Dowling was outside the ordinary course and scope of employment at the time of the collision. Subsequently, plaintiffs submitted this concession in writing, which effectively removed the vicarious liability claim from the case. *McHaffie v. Bunch*, 891 S.W.2d 822, 825[1] (Mo.banc 1995).

In plaintiffs' point on appeal, they contend the trial court erred when it granted Archway's motion because it had a legal duty to the general public, to Mark, and to plaintiffs, Mark's parents, to use reasonable care to avoid creating an unreasonable risk of harm by discharging from work employees who were overexposed to toxic fumes throughout the day at work, and who therefore were at risk for incapacitating illness endangering themselves and others.

The content of Archway's motion clearly indicates that the motion to dismiss for failure to state a claim was directed to plaintiffs' negligence claim of Count II. Further, the trial court did not consider any matters outside the pleadings in ruling on the negligence claim. Therefore, we review Archway's motion as a motion to dismiss the negligence claim. Since the trial court sustained Archway's motion without specifying the grounds upon which it based it's ruling, we presume the dismissal was on the grounds alleged in Archway's motion. *Housing Authority of St. Louis County v. Lovejoy*, 731 S.W.2d 510 (Mo.App.1987).

■ When reviewing the grant of a motion to dismiss, we treat the facts averred in the petition as true and construe the averments liberally and favorably to the plaintiff. A petition is not to be dismissed for failure to state a claim if any set of facts is asserted which, if proved, would entitle the plaintiff to relief. *Martin v. City of Washington*, 848 S.W.2d 487, 489 [1,2] (Mo.banc 1993). While

we accept pleaded facts as true, "the conclusions of the pleader are not to be considered in determining whether plaintiffs have stated a cause of action because the averment of a legal conclusion is not a statement of an issuable fact and is to be treated as no statement at all." *Goodson v. City of Ferguson*, 339 S.W.2d 841, 845–846 [5,6] (Mo.1960).

 In an action for negligence, the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty, and that plaintiff's injury was proximately caused by defendant's failure. *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 [2,3] (Mo.banc 1990).

Plaintiffs' amended petition sets forth both allegations of fact and conclusions of law. Count II essentially incorporated by reference the following pertinent allegations from Count I:

a) On September 26, 1994, Mark was driving a car on Highway 44, when he was involved in a collision with a vehicle driven by Chris Dowling.

b) As a result of the collision and the injuries he sustained in the collision, Mark died the same day.

c) Dowling was negligent in causing the collision because he failed to keep a careful lookout, drove at excessive speed, failed to yield the right of way, crossed over a divided highway, and went on the wrong side of the road.

d) In the moments leading up to the time he crossed over the median of the divided interstate highway into a head-on-crash with Mark, Dowling became unconscious because of the dangerous fumes to which he had been overexposed at work, and which he had been required to work with and around throughout work that day.

In Count II, plaintiffs also plead a combination of facts and legal conclusions, essentially pleading:

a) Archway operated a business that required its workers to use chemicals which produce byproduct fumes that are dangerous to workers.

b) Archway overexposed Dowling to dangerous chemical fumes, particularly HP13;

failed to consult experts about the deleterious effects of the fumes; failed to provide safe transportation for him after his overexposure; and allowed him to drive home after his overexposure.

c) Archway experienced a ventilation malfunction in its plant and required its workers to proceed despite the malfunction.

Additionally, the amended petition asserted legal conclusions:

a) This fume hazard at Archway created a reasonably foreseeable unreasonable risk of harm for both the individual worker and those around him, as well as the general public, particularly in so far as the fumes diminish the capacity of the worker to remain conscious and drive with the highest degree of care at the end of the normal work day.

b) At all times (Archway) was under a legal duty, visa-vis Dowling and members of the general traveling public, particularly Mr. Berga, as expressed in the Restatement (Second) of Torts, § 317 as follows:

To use reasonable care so to control its servant (Dowling) while acting *outside the scope of his employment* as to prevent him (Dowling) from intentionally harming others, or *from so conducting himself as to create an unreasonable risk of bodily harm to them,* if

(a) **the servant (Dowling)**

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) **is using a chattel (solvents and liquids creating noxious fumes) of the master,** and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

The amended petition quoted the section of the Restatement almost verbatim but substituted the terms "use" for "exercise," "its" for "his," added terms in brackets, and bolded and italicized terms for emphasis.

Further, the amended petition essentially asserted other legal conclusions:

a) Section 317 announces the rule, which has been applied to hold employers directly liable for creating a foreseeable unreasonable risk of harm due to the incapacity and illness of workers as they leave the premises.

b) *Widlowski v. Durkee Foods* [190 Ill. App.3d 381, 137 Ill.Dec. 825, 826], 546 N.E.2d 770, 771 (Ill.App.3d 1989) and *Osment v. Pitcairn* [349 Mo. 137], 159 S.W.2d 666, 667 (Mo.1941) also support imposing a duty upon Archway to control Dowling's conduct while acting after and outside the course and scope of employment.

c) Archway breached the above duties by overexposing Dowling to dangerous chemical fumes, particularly HP13; failing to consult experts about the deleterious effects of the fumes; failing to provide safe transportation for Dowling; and allowing him to drive after he had been overexposed.

d) Archway knew or in the exercise of reasonable care should have known of the danger of chemicals used in its business, particularly HP13, and the foreseeable unreasonable risk of harm that its workers would create for themselves and to the general public while driving home from work in the event these workers became overexposed to the fumes at work and were rendered unfit to drive.

e) Archway was liable per se for violations of the Missouri Factory Act, § 292.010 *et seq.* and particularly the Ventilation Act, § 292.110.

f) Further, Archway was negligent when it required Dowling to work after the plant experienced a ventilation malfunction.

g) All the fault of Archway, as alleged, directly caused or directly contributed to cause Dowling's loss of consciousness and loss of control of his car and ultimately the collision in which Mark suffered fatal injuries.

█ Here, the issue is the first negligence element—duty. *Dix v. Motor Market, Inc.* 540 S.W.2d 927, 932 [6–8] (Mo.App.1976). Before an act is said to be negligent, there must exist a duty to the individual complaining, the observance of which would have averted or avoided the injury. *Id.* The duty owed is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it. *Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 710 [2,3] (Mo.banc 1990). No duty is owed to persons outside the orbit of the danger as disclosed to the eye of reasonable vigilance. *Id.*

█ In their amended petition, plaintiffs allege that § 317 creates a duty on Archway since Dowling had, inside his system at the time of the collision, noxious fumes from solvents and liquids used in his work. Here, the collision occurred outside the scope of Dowling's employment and the employer's premises. This makes it necessary for the chattel requirement to be satisfied before a duty may be found under § 317. *See* § 317(a)(ii).

In *Conroy v. City of Ballwin,* 723 S.W.2d 476, 479 (Mo.App.1986), we recognized § 317, where a hunter was struck by a bullet, fired by an off-duty police officer for the City of Ballwin, who was target shooting using his own firearm outside the city limits. The hunter sued the police officer, and the City of Ballwin. *Id.* at 477. We held the hunter failed to establish a duty on the part of the City of Ballwin to exercise its control over a police officer acting outside the scope of his employment where the officer personally owned the pistol he was using. *Id.* at 479. Therefore, the officer was not using a chattel of the City of Ballwin. *Id.*; *See* § 317(a)(ii).

Section 317 is found in the Restatement (Second) of Torts under the topic of "Duties of Affirmative Action" and the title of "Duty to Control Conduct of Third Persons." The lead Restatement section in this title is § 315, which provides: § 315. General Principle

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless:

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

The explanatory notes to § 315, Comment b, help clarify the Restatement section:

In the absence of either one of the kinds of special relations described in this Section, the actor is not subject to liability if he fails, either intentionally or through inadvertence, to exercise his ability so to control the actions of third persons as to protect another from even the most serious harm. This is true although the actor realizes that he has the ability to control the conduct of a third person, and could do so with only the most trivial of efforts and without any inconvenience to himself.

We recognized § 315 in *Hammers v. Farm Bureau Town & Country Ins. Co. of Missouri,* 792 S.W.2d 19, 21 (Mo.App.1990). Sections 316, "Duty of Parent to Control Conduct of Child;" 317, "Duty of Master to Control Conduct of Servant;" and 318, "Duty of Possessor of Land or Chattels to Control Conduct of Licensee;" provide several situations where "special relations" create specific exceptions to the no duty principle of § 315.

Section 318 provides:

If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor:

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control.

Section 318 appears to be closely related to § 317. A similar theme as to chattels is revealed in examining the comments.

Section 317, Comment b, provides, in pertinent part:

A master is required to police his own premises, and those upon which, though in the possession of another, he has a privilege of entry for himself and his servants, to the extent of using reasonable care to exercise his authority as a master in order to prevent his servant from doing harm to others. So too, he is required to exercise his authority as master to prevent them from **misusing chattels which he entrusts to them for use as his servants** ... On the other hand, the master as such is under no peculiar duty to control the conduct of his servant while he is outside of the master's premises, **unless the servant is at the time using a chattel entrusted to him as servant.** (emphasis ours)

Section 318, Comments b and c, provide, in pertinent part:

b. The rule stated in this Section is applicable where the possessor of a chattel or of land is present **when the chattel is being used** or the activity is being carried on **with his permission,** and when, therefore, he has not only the ability to control the conduct of the third person as possessor, but also the opportunity to do so.

c. Whether one who **permits another to use** land or **chattels** as licensee should be vigilant to discover whether the **use proposed** will create an unreasonable risk of harm to others depends upon the character of the property, **the use which the licensee is making of it, and the circumstances under which it is used.** (emphasis ours)

It is clear, as reflected in the comments to the sections, that the employer entrusts the chattel to the employee for use as an employee. Therefore, to establish liability on the part of the Archway under § 317, it is necessary to show that the chattel was entrusted to Dowling for use as an employee of Archway. Plaintiffs' pleadings allege and infer that Dowling was using solvents at work and inhaled the fumes of the solvents, which remained in his system when he left work. Further, the pleadings infer that Dowling's body was "using" the fumes, causing unconsciousness and the resulting collision. There are no indications that the solvents were in Dowling's vehicle. The solvents were used by Dowling in the performance of his job

duties, or they were part of the work environment. His inhalation of the fumes and their presence in his body are the result of his work environment, and his body's "use" of the fumes, resulting in his unconsciousness, is not the misuse of a chattel entrusted to him for use as an employee of Archway. Thus, the "use" of the fumes may not be the basis for imposing liability as envisioned by the rationale of the Restatement. Also, the nature of the chattel envisioned in § 317 constitutes something more tangible than fumes, such as an employer's vehicle. *See Mosko v. Raytheon,* 416 Mass. 395, 622 N.E.2d 1066, 1070 (1993) (employer's vehicle); *Pilgrim v. Fortune Drilling Co.,* 653 F.2d 982, 986 (5th Cir.1981) (employer's vehicle); *McCrink v. City of New York,* 296 N.Y. 99, 71 N.E.2d 419, 422 (1947) (employer's firearm); and *Conroy,* 723 S.W.2d at 479 (employer's firearm).

Plaintiffs argue " § 317 is the watershed of cases imposing liability on employers for off-duty employees who have become dangerous at work or on business drinking, who then go on to cause collisions connected with intoxicated driving." In those cases, employers made liquor available on the premises or at other sponsored functions to their employees, who intentionally consumed the liquor. Most courts that considered these types of cases did not evoke the chattel provision under § 317(a)(ii) but relied on premise responsibility under § 317(a)(i) and negligence, i.e. failure to control obviously intoxicated employees. *Thies v. Cooper,* 243 Kan. 149, 753 P.2d 1280, 1285 (1988); *Gariup Const. Co., Inc. v. Foster,* 519 N.E.2d 1224, 1229 (Ind.1988); and *Meany v. Newell,* 367 N.W.2d 472, 476 (Minn.1985); *cf. Bruce v. Chas Roberts Air Conditioning, Inc.,* 166 Ariz. 221, 801 P.2d 456, 463, 464 (App.1990); and *Costa v. Able Distributors, Inc.,* 3 Haw.App. 486, 653 P.2d 101, 105 (1982).

Further, plaintiffs contend that *Widlowski v. Durkee Foods,* 190 Ill.App.3d 381, 137 Ill.Dec. 825, 826, 546 N.E.2d 770, 771 (1989), and *Osment v. Pitcairn,* 349 Mo. 137, 159 S.W.2d 666, 667 (1941), support the imposition of a duty upon Archway. *Widlowski* involved an employee who, after becoming overcome by nitrogen gas while cleaning an industrial tank on the employer's premises, bit a portion of a nurse's finger off while being treated at a medical center. *Widlowski,* 137 Ill.Dec. at 825, 826, 546 N.E.2d at 770, 771. The nurse brought an action against the employee and his employer. *Id.* 137 Ill.Dec. at 826, 546 N.E.2d at 771. The appellate court held that the employer owed the nurse a duty of ordinary care under a general duty analysis. *Id.* 137 Ill.Dec. at 827, 546 N.E.2d at 772. The Illinois Supreme Court in *Widlowski v. Durkee Foods,* 138 Ill.2d 369, 150 Ill.Dec. 164, 167, 562 N.E.2d 967, 970 (1990) reversed the holding, finding that the employer did not owe the nurse a duty of ordinary care. The Court reasoned that finding the employer owed the nurse a duty would extend liability to the world at large. *Id.* 150 Ill.Dec. at 166, 562 N.E.2d at 969. *Osment* involved a railroad's appeal from an adverse judgment under the Federal Employers' Liability Act where its messenger had engaged in horseplay and injured a switchman, while on the railroad's premises. *Osment,* 159 S.W.2d at 667. The switchman cited § 317 as support for his theory of recovery under the act, negligent retention of a harmful employee. *Id.* Our Supreme Court reversed the trial court's ruling and held the railroad was not liable because the messenger was acting outside the scope of his employment and not in any furtherance of the railroad's business. *Id.* at 668, 670. Here, neither of these cases support imposing a duty upon Archway.

Additionally, plaintiffs contend that *Snowbarger v. Tri–County Electric Cooperative,* 793 S.W.2d 348 (Mo.banc 1990); *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983); and *Faverty v. McDonald's Restaurants of Oregon, Inc.,* 133 Or.App. 514, 892 P.2d 703 (1995), support imposition of a duty upon Archway. *Snowbarger* involved an appeal by an employee's widow for benefits under the Workers Compensation Act where an employee who, after working 86 hours in a 100.5 hour time period during an emergency created by an ice storm, fell asleep at the wheel and crashed into another vehicle, killing the employee. *Snowbarger,* 793 S.W.2d at 350. Our Supreme Court held that the facts before it satisfied an exception to the requirement of § 287.020.5 that workers be

"engaged in or about the premises where their duties are being performed or where their services require their presence as a part of such service" but did not address whether the employer had any duty to the woman injured when the employee collided with her after falling asleep. *Id.* at 349. *Robertson* involved a couple's appeal of a directed verdict in their action for injuries sustained where an employee, after performing manual labor for 27 hours straight for his employer, fell asleep while driving home and collided with the couple's vehicle. *Robertson,* 301 S.E.2d at 564. Several times during the 27 hour period, the employee had expressed to his foremen that he was tired and wanted to go home, and each time the foremen refused to do so unless the employee received permission from the roadmaster in charge. *Id.* at 565. The employee did not consult the roadmaster because he feared losing his job, which resulted from a previous encounter with the roadmaster where the employee was laid off for a week. *Id.* Finally, after working 27 hours, the employee asked and was granted permission by the roadmaster to go home. *Id.* Another employee drove the fatigued employee to his car, during which time the employee fell asleep with a lit cigarette in his hand. *Id.* The Supreme Court of West Virginia recognized that § 317 would not create a duty upon the employer in that case, but held the employer had a duty under a general duty analysis of the employer's affirmative acts. *Id.* at 567. In finding a duty, the court focused on the affirmative acts of requiring the worker to continue, despite the workers' verbal indications of his condition, and driving the employee to his vehicle, despite obvious indications of his condition, such as falling asleep with a lit cigarette after working for 27 hours. *Id.* at 569. Here, there are no allegations of similar affirmative acts by Archway. *Faverty* involved a company's appeal of an adverse jury verdict that awarded damages to an individual who was injured when his vehicle was struck by a high school student who, after working three shifts in 24 hours at a McDonald's, fell asleep while driving home. *Faverty,* 892 P.2d at 705. The employee's supervisor asked for volunteers to work extra shifts, which resulted in the employee working his regular shift from 3:30 p.m. to 7:30 p.m., a cleanup shift from midnight to 5:00 a.m., and another shift from 5:00 a.m. to 8:21 a.m. *Id.* During the third shift, the student was visibly fatigued and asked his supervisor to be excused from another shift so that he could rest. *Id.* Responding to the company's argument that they were entitled to a motion to dismiss or a directed verdict under §§ 315 and 317 by the trial court, the court of appeals concluded that precedent, *Fazzolari v. Portland School Dist. No. 1J,* 303 Or. 1, 734 P.2d 1326 (1987), required them to use an analysis of "general duty to avoid conduct that unreasonably creates a foreseeable risk of harm to a plaintiff" instead of recognizing the principles of the Restatement sections. *Id.* at 708. The existence of scheduling policies that resulted from overly tired employees, the supervisor's knowledge of previous accidents related to fatigued employees, and the affirmative act of requiring a visibly fatigued worker to continue working all constituted sufficient evidence for the appellate court to support the trial court's rulings. *Id.* at 709. Neither *Snowbarger, Robertson,* nor *Faverty* support the imposition of a duty upon Archway under § 317.

Plaintiffs failed to include their negligence per se allegations from Count II in their point on appeal. By failing to do so, plaintiffs did not preserve these allegations for our review. In any event, we find that Archway is not liable per se to plaintiffs, including Mark, under the Missouri Factory Act, § 292.010 *et seq.,* and particularly the Ventilation Act, § 292.110. In *Glaser v. Rothschild,* 221 Mo. 180, 120 S.W. 1, 12 (1909), our Supreme Court held that the act, § 292.010 *et seq.,* was enacted for the protection of the health and safety of employees of businesses mentioned in the act, and is not available to someone who is not an employee. *See also Ridenhour v. Colson Caster Corp.,* 687 S.W.2d 938, 945 (Mo.App.1985).

Judgment affirmed.

AHRENS, P.J., and PUDLOWSKI, J., concur.